CAROLYN M. SPROLES AND HUSBAND, CHARLES B. SPROLES, PLAINTIFFS v.
DAVID REED GREENE, TRAVELERS INDEMNITY INSURANCE COM-
PANY AND UNITED STATES FIDELITY AND GUARANTY COMPANY,
DEFENDANTS

JAMES A. PHILLIPS AND WIFE, RITA L. PHILLIPS, PLAINTIFFS v. DAVID REED
GREENE, TRAVELERS INDEMNITY INSURANCE COMPANY AND
AETNA CASUALTY & SURETY COMPANY, DEFENDANTS

CAROLYN M. SPROLES AND HUSBAND, CHARLES B. SPROLES, PLAINTIFFS v.
TRAVELERS INDEMNITY COMPANY OF AMERICA, UNITED STATES
FIDELITY AND GUARANTY COMPANY AND THE AETNA CASUALTY
& SURETY COMPANY, DEFENDANTS

CAROLYN M. SPROLES AND HUSBAND, CHARLES B. SPROLES, PLAINTIFFS v.
INTEGON GENERAL INSURANCE CORPORATION, DEFENDANT

No. 8824SC641

(Filed 21 August 1990)

1. **Insurance § 69 (NCI3d) — business automobile insurance —
underinsured motorist coverage — unavailability to injured
employee**

Underinsured motorist coverage on vehicles owned by a
nursery business was not available to employees injured while
riding in a vehicle not owned by the nursery even though
the employees were on a business trip at the time of the accident.

**Am Jur 2d, Automobile Insurance § 322.**

2. **Insurance § 69.1 (NCI3d) — amount of underinsured motorist
coverage**

The underinsured motorist coverage of an automobile policy
per person and per accident was the same amount as the
personal injury liability coverage by operation of N.C.G.S.
§ 20-279.21(b)(4) even though the policy stated lower limits.

**Am Jur 2d, Automobile Insurance § 322.**

3. **Insurance § 69 (NCI3d) — underinsured motorist coverage —
policy limits exhausted — inapplicable to loss of consortium claim**

The underinsured motorist coverage of an automobile policy
did not apply to a husband's loss of consortium claim based
on injuries to his wife where the insurer's maximum liability

for injuries to the wife will be exhausted by payment of that amount toward the wife's unsatisfied judgment against the tortfeasor.

**Am Jur 2d, Automobile Insurance §§ 293, 426, 450.**

**4. Insurance § 69 (NCI3d) — underinsured motorist coverage — two policies — maximum liability — amount paid by tortfeasor's insurer**

The trial court erred in allowing each of two underinsured motorist insurers to reduce its maximum liability by the $25,000 paid to the injured party by the tortfeasor's liability insurer. Rather, only the aggregate amount of the two coverages should have been reduced by the $25,000 payment, and the maximum liability of each insurer should have been reduced by only $12,500.

**Am Jur 2d, Automobile Insurance § 298.**

**5. Judgments § 55 (NCI3d) — prejudgment interest — amount not covered by liability insurance**

An automobile liability insurer was liable for prejudgment interest on plaintiff's entire $750,000 judgment against its insured, not just on the $25,000 covered by liability insurance. N.C.G.S. § 24-5(b).

**Am Jur 2d, Automobile Insurance § 428.**

**6. Judgments § 55 (NCI3d) — automobile insurance — interest on judgment — offer to pay policy limit**

Interest on a judgment against a tortfeasor did not stop upon an offer by the tortfeasor's automobile insurer to pay its policy limit but continued until the date that the policy limit was actually paid into court. A clause of the automobile liability policy providing that the insurer's duty to pay interest ends when it pays that part of the judgment which does not exceed its limit of liability conflicts with N.C.G.S. § 24-5 and is thus without effect.

**Am Jur 2d, Automobile Insurance § 428.**

**7. Insurance § 69 (NCI3d) — underinsured motorist coverage — no reduction for workers' compensation**

N.C.G.S. § 20-279.21(e) does not permit an insurance carrier to reduce the underinsured motorist coverage in a per-

sonal automobile insurance policy by amounts paid to the insured as workers' compensation benefits.

**Am Jur 2d, Automobile Insurance §§ 293, 316.**

8. **Insurance § 69.1 (NCI3d) — underinsured motorist coverage — policy limit — no reduction for payment by another insurer**

An underinsured motorist insurer's policy limit obligation was not reduced by an underinsured motorist payment received by the injured insured from another insurer. A provision of the policy limiting an injured insured's recovery to the highest applicable limit of liability under any one policy conflicts with N.C.G.S. § 20-279.21(b)(4) and is unenforceable.

**Am Jur 2d, Automobile Insurance §§ 327, 328.**

APPEAL by plaintiffs and defendant United States Fidelity and Guaranty Company from order entered 15 January 1988 and judgment entered 5 February 1988 by *Judge Charles C. Lamm, Jr.* in MITCHELL County Superior Court. Heard in the Court of Appeals 10 January 1989.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Roy W. Davis, Jr. and Michelle Rippon, for plaintiff appellants-appellees Sproles.*

*Patla, Straus, Robinson & Moore, by Harold K. Bennett, for plaintiff appellants-appellees Phillips.*

*Harrell & Leake, by Larry Leake, for defendant appellant-appellee United States Fidelity and Guaranty Company.*

*. Palmer, Miller, Campbell & Martin, P.A., by Douglas M. Martin, for defendant appellee Aetna Casualty and Surety Company.*

*Roberts Stevens & Cogburn, P.A., by Steven D. Cogburn and Glenn S. Gentry, for defendant appellee Integon General Insurance Corporation.*

PHILLIPS, Judge.

The appeals in these consolidated cases are from an order and judgment establishing the rights and obligations of the parties under certain automobile insurance policies issued by the defendant insurance companies. Each plaintiff — except Charles B. Sproles, who was not there and sued only for lost consortium — was seriously

## SPROLES v. GREENE

[100 N.C. App. 96 (1990)]

injured on 27 January 1984 when the GMC station wagon they were riding in was struck by a Chevrolet automobile operated by defendant Greene, whose car was insured by defendant Integon General Insurance Corporation for the minimum bodily injury limits of $25,000 per person and $50,000 per accident. Greene's liability to the Phillips has not yet been determined; his liability to the Sproles was established at $950,000 by a judgment entered in case number 86CVS152 on 17 July 1987 — $750,000 to Mrs. Sproles, $200,000 to Mr. Sproles. On Greene's liability to Mrs. Sproles, Integon paid the court $27,312.36 on 30 July 1987; the payment covered Greene's $25,000 policy limit, prejudgment interest on $25,000 from the time suit was filed, and Greene's other court costs. Denying that its policy covers Mr. Sproles' judgment Integon has paid nothing on it. The actions allege that underinsured motorist insurance provided by the following policies apply to the damages of some or all of the plaintiffs; a policy issued by Travelers Insurance Company on the station wagon which was owned by Avery County Recapping Company, Inc. and operated by James A. Phillips; a policy issued by United States Fidelity and Guaranty Company on the personal automobiles of the Sproles; and a policy issued by Aetna Casualty & Surety Company on the business of Lakeview Nursery and Garden Center, Inc., the employer of the Phillips and Mrs. Sproles, who were on a business trip for Lakeview at the time. Aetna's policy also provided workers' compensation insurance for Lakeview's employees and Mrs. Sproles has received various payments thereunder.

After considering the provisions of the various policies and the other evidence presented by the parties, the court made in substance the following adjudications:

(a) The underinsured motorist coverage in Travelers' policy on the station wagon, with limits of $100,000 for the accident, is available to both sets of plaintiffs and is primary to other coverages of this type; its maximum liability was reduced to $75,000 by Integon's $25,000 and $50,000 policy on Greene's vehicle.

(b) The underinsured motorist coverage in Aetna's policy on Lakeview Nursery and Garden Center is not available to any of the plaintiffs because the policy covered only vehicles belonging to Lakeview.

(c) The underinsured motorist coverage in USF&G's policy on the Sproles' vehicles is available to Mrs. Sproles but does not apply to Mr. Sproles' consortium claim; the coverage limits are $100,000 for the accident, though the policy's liability limits are $300,000 per accident and $100,000 per person; the limits must be credited with the $25,000 Mrs. Sproles received from Integon; no credit is due USF&G for Travelers' underinsured motorist payments or the workers' compensation payments that Aetna made to Mrs. Sproles.

(d) Integon's liability policy on Greene's car does not apply to any of the consortium claims; Integon is not liable for prejudgment interest on the Sproles' judgments and has paid all the post-judgment interest due.

The adjudications as to Travelers were settled by that company paying $58,250 to the Sproles and agreeing to pay the Phillips $41,750 in the event they obtain judgment against Greene for that much more than the $25,000 available to them under Integon's policy. Six of the remaining adjudications are challenged by one or more of the plaintiffs and two others are challenged by USF&G. The challenged holdings are addressed in sequence.

I.

PLAINTIFF'S APPEAL

A.

*The holding that the underinsured motorist insurance provided by Aetna's policy with Lakeview Nursery and Garden Center is not available to any of the plaintiffs because the coverage applied only to vehicles owned by Lakeview.*

[1] This holding by the trial court is correct and we affirm it. The policy states in "ITEM TWO. SCHEDULE OF COVERAGES AND COVERED AUTOS" that the only autos covered by its uninsured motorist insurance (of which underinsured motorist insurance is a type, G.S. 20-279.21(b)(4) ) were autos classified as Class 2 vehicles by ITEM THREE of the policy. That item defines Class 2 vehicles as "Only those *autos you* own." This means, of course, that the coverage applied only to vehicles owned by the policyholder, Lakeview Nursery and Garden Center, Inc. Though no vehicle owned by Lakeview was involved in the collision and the vehicle they were injured in was owned by Avery County Recapping Company,

plaintiffs argue that the policy terms can and should be construed to cover the vehicle in which they were riding because it was a business policy designed to cover Lakeview's nursery operation, and the Phillips and Mrs. Sproles were employees on a business trip when injured. Though these facts are undisputed, they do not justify expanding the policy terms beyond those explicitly agreed to by the contracting parties. For in obtaining the insurance, as the application shows, Lakeview had the option of having it cover vehicles of several different classifications, including Class 1, defined as "ANY AUTO," or Class 9, defined to include borrowed vehicles used in connection with the business, but chose to cover only its own vehicles. That limitation having been agreed to by the parties to the policy, it is binding upon us and the plaintiffs.

## B.

*The holding that USF&G's underinsured motorist insurance limits on the Sproles' vehicles are $100,000 for the accident, as the policy states, though the policy's bodily injury liability limits are $300,000 for each accident and $100,000 for each person.*

[2] This holding is erroneous and we reverse it. G.S. 20-279.21(b)(4) as it now exists, following the 1985 amendment, explicitly requires, in substance, that unless rejected by the policyholder each automobile insurance policy issued in this state must have underinsured motorist coverage in the same amount as the personal injury liability coverage. Recently our Supreme Court held that G.S. 20-279.21(b)(4) as it existed when this policy was issued, though not as clearly written, meant the same thing. *Proctor v. N. C. Farm Bureau Mutual Insurance Co.*, 324 N.C. 221, 376 S.E.2d 761 (1989). So notwithstanding the lower limits stated in the policy, since the Sproles admittedly did not reject the underinsured motorist coverage and the policy has liability limits of $100,000 per person and $300,000 per accident, the underinsured motorist coverage is in the same amount by operation of the statute. Upon remand, therefore, this ruling must be modified to provide that USF&G's underinsured motorist coverage limits are $100,000 per person and $300,000 per accident.

## C.

*The holding that USF&G's underinsured motorist insurance coverage does not apply to the consortium claim of Mr. Sproles.*

[3] This adjudication is correct and we affirm it. The Limit of Liability provision in the bodily injury section of the USF&G policy states that:

The limit of liability shown in the Declarations for "each person" for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. . . This is the most we will pay as a result of any one auto accident regardless of the number of . . . [c]laims made; . . .

The Limit of Liability provision in the Uninsured Motorists Coverage section of the policy states the same thing. These clear and unambiguous provisions, not forbidden by law, are binding upon the parties. Under these provisions and our ruling in B above, USF&G's maximum liability for the bodily injury sustained by Mrs. Sproles is $100,000, and since that liability will be exhausted upon paying that amount against her unsatisfied judgment against Greene, we need not determine whether the coverage would apply to Mr. Sproles' derivative claim based upon Mrs. Sproles' injury if her damages were less than $100,000. *Robinson v. Seaboard System Railroad, Inc.*, 87 N.C. App. 512, 361 S.E.2d 909 (1987), *disc. rev. denied*, 321 N.C. 474, 364 S.E.2d 924 (1988).

D.

*The holding that USF&G's liability to Mrs. Sproles is reduced by the $25,000 she received from the tort-feasor's insurer.*

[4] The trial court erred in granting both USF&G and Travelers a $25,000 reduction in their obligation because of the single $25,000 payment Integon made for the underinsured Greene. G.S. 20-279.21(b)(4) (1983) provides in pertinent part that:

The insurer shall not be obligated to make any payment because of bodily injury to which underinsured motorist insurance coverage applies and that arises out of the ownership, maintenance, or use of an underinsured highway vehicle until after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements,

and provided the limit of payment is only the difference between the limits of the liability insurance that is applicable and the limits of the underinsured motorist coverage as specified in the owner's policy. . .

The trial court's holding was apparently based upon *Davidson v. United States Fidelity and Guaranty Co.*, 78 N.C. App. 140, 336 S.E.2d 709 (1985), *aff'd*, 316 N.C. 551, 342 S.E.2d 523, *reh'g denied*, 317 N.C. 342, 346 S.E.2d 138 (1986), where it was held that the underinsured motorist limits had to be reduced by the $25,000 the insured received from the tort-feasor's insurance company. But that case involved only one underinsured motorist policy with limits of $25,000 and is not authority for the proposition that each of several applicable underinsured motorist policies must be reduced by the amount paid for the tort-feasor. Our law is rather that an insured may collect under multiple underinsured motorist policies up to, but not more than, his actual loss and that a carrier having accepted a premium for underinsured motorist coverage may not deny coverage on the ground that other such insurance is available to the insured. *Moore v. Hartford Fire Insurance Company*, 270 N.C. 532, 155 S.E.2d 128 (1967). Thus, in this case, the two underinsured motorist coverages available to Mrs. Sproles in the aggregate amount of $200,000 should have been reduced by $25,000, the only payment Integon made, rather than $50,000; the maximum liability of each carrier should have been reduced by $12,500 rather than $25,000; and the judgment entered against USF&G should have been for $87,500, rather than $75,000. *See Schmick v. State Farm Mutual Insurance Co.*, 704 P.2d 1092, 103 N.M. 216 (1985); *Connolly v. Royal Globe Insurance Co.*, 455 A.2d 932 (Me. 1983).

E.

*The holding that Integon is liable for prejudgment interest on only $25,000 of Mrs. Sproles' $750,000 judgment against its insured.*

[5] This holding is erroneous and we reverse it. Integon's policy states in pertinent part that "[i]n addition to our limit of liability, we will pay all defense costs we incur." Prejudgment interest, provided for by G.S. 24-5, is a "cost" within the meaning of an insurance contract. *Lowe v. Tarble*, 313 N.C. 460, 329 S.E.2d 648 (1985). Before being amended in 1985, G.S. 24-5 was construed as requiring prejudgment interest on only the portion of a judgment covered by liability insurance. *Wagner v. Barbee*, 82 N.C. App. 640,

347 S.E.2d 844 (1986), *disc. rev. denied*, 318 N.C. 702, 351 S.E.2d 761 (1987). That limitation on the tort-feasor's liability for pre-judgment interest was removed by the amendment made effective 1 October 1985 which caused the statute to read as follows:

> (b) Other Actions—In an action other than contract, the portion of money judgment designated by the fact finder as compensatory damages bears interest from the date the action is instituted until the judgment is satisfied. Interest on an award in an action other than contract shall be at the legal rate.

The amendment applies to this case; for the terms of its enactment excluded from its application only pending litigation, and this action was not filed until May, 1986, several months after the amendment's effective date. Upon remand prejudgment interest on Mrs. Sproles' $750,000 judgment must be taxed against Greene, less the interest already paid.

## F.

*The holding that Integon has paid the post-judgment interest our law requires.*

[6]  This holding is erroneous and we reverse it. It is based upon the undisputed fact that on the date the judgments against Greene were filed Integon orally offered to pay its policy limit, prejudgment interest, and the costs to plaintiffs, but it did not pay those sums into court until thirteen days later. In arguing that the court correctly ruled that interest on the judgment stopped upon its offer to pay Mrs. Sproles the amount due under its policy, Integon points to the following provision of the policy:

> In addition to our limit of liability, we will pay on behalf of a covered person:
>
> . . . .
>
> 3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

This policy limitation conflicts with G.S. 24-5 and is therefore without effect. *Nationwide Mutual Insurance Co. v. Chantos*, 293 N.C. 431, 238 S.E.2d 597 (1977). G.S. 24-5 specifically provides that a noncontractual judgment "bears interest from the date the action

SPROLES v. GREENE

[100 N.C. App. 96 (1990)]

is instituted *until the judgment is satisfied*," (emphasis supplied), and no part of Mrs. Sproles' judgment was satisfied by Integon's offer to pay its policy limits thereon. For in the absence of a stipulation to the contrary, a money judgment is satisfied only by paying the obligated amount into court. *See* the word "satisfaction," Black's Law Dictionary 1204 (5th ed. 1979). Thus, upon remand the costs against Greene must be retaxed to include interest on Mrs. Sproles' judgment until the date its policy limits were paid into court.

## II.

### DEFENDANT USF&G'S APPEAL

#### A.

*The holding that USF&G's maximum underinsured motorist insurance obligation to Mrs. Sproles is not reduced by the workers' compensation payments she has received or will receive from Aetna.*

[7] This holding is correct and we affirm it. In contending that this holding is erroneous USF&G relies upon the following language in the "limit of liability" section of its policy:

Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

. . . .

2. Paid or payable because of the bodily injury under any of the following or similar law:

a. workers' compensation law; or

b. disability benefits law.

It contends that this policy language is specifically authorized by G.S. 20-279.21(e), which provides as follows:

(e) Such motor vehicle liability policy need not insure against loss from any liability for which benefits are in whole or in part either payable or required to be provided under any workmen's compensation law nor any liability for damage to property owned by, rented to, in charge of or transported by the insured.

Though this statute appears to only make plain that the mandatory liability policy required by the Motor Vehicle Safety and Financial Responsibility Act does not have to provide either workers' compensation coverage or insurance against liability for damaging property which the insured owns, controls, or is transporting, it has been construed to reduce a carrier's underinsured motorist coverage liability under some circumstances. In *Manning v. Fletcher*, 324 N.C. 513, 379 S.E.2d 854, *reh'g denied*, 325 N.C. 277, 384 S.E.2d 517 (1989), under the authority of G.S. 20-279.21(e) a carrier was permitted to reduce its underinsured motorist coverage liability under a *business auto insurance policy* by the workers' compensation payments which the insured employee had received.

The circumstances of that case are quite different from those in this one, however, and that decision does not authorize the reduction of USF&G's liability here. In *Manning* the business auto insurance policy involved was purchased by plaintiff's employer, who instead of rejecting the underinsured motorist coverage, as it had a right to do, obtained it for the employee's protection with the provision reducing its liability by any workers' compensation paid to the employee; the workers' compensation coverage for the injured employee was also paid for by the employer who obtained it from an affiliate of the motor vehicle insurer; and the amount of plaintiff's damage was not established, the parties stipulating only that it was "not less than" the $100,000 insurance limit, against which the tort-feasor's carrier had paid its $25,000 limit and the workers' compensation carrier had paid $59,000. Based upon these circumstances, the court concluded that reducing the carrier's underinsured motorist insurance obligation by the workers' compensation payments that the employee had received would serve the public policies — (1) of relieving employers of the wasteful burden of providing duplicate insurance coverages for its employees (workers' compensation and underinsured motorist coverages); and (2) of preventing the employee from receiving a "double recovery" for the same injury.

In this case USF&G's policy is not a business policy, it is a "Personal Auto Policy"; the policy was not paid for by Mrs. Sproles' employer, she and her husband paid for it; the workers' compensation insurance was not provided by USF&G or an affiliate; and Mrs. Sproles' damages have been established at an amount far in excess of any kind of insurance that is available to her. Thus, reducing USF&G's liability to Mrs. Sproles by the workers'

compensation she has received from Aetna would not serve either of the secondary public policies enunciated in *Manning*. Instead, it would disserve the dominant public policy behind the Financial Responsibility Act, that of making insurance available for the compensation of innocently injured accident victims, and leave unfulfilled the Sproles' purpose in buying the coverage in the first place. Nothing in G.S. 20-279.21(e) suggests to us that our General Assembly intended to authorize any such absurdity.

Other jurisdictions, in the absence of an authorizing statute, have held the policy provision relied upon by USF&G void against public policy. *See O'Bar v. MFA Mutual Insurance Co.*, 275 Ark. 247, 628 S.W.2d 561 (1982); *Sweeney v. Hartford Accident & Indemnity Co.*, 136 N.J.Super. 591, 347 A.2d 380 (1975). And where such policy provisions are authorized the better holdings have setoff the injured claimant's workers' compensation payments against the damages sustained, rather than against the carrier's limits. *Lombardi v. Merchants Mutual Insurance Co.*, 429 A.2d 1290 (R.I. 1981); *The American Insurance Co. v. Tutt*, 314 A.2d 481 (D.C.App. 1974). Such holdings not only serve the main public policy that led to the enactment of financial responsibility acts in the first place — making compensation available to innocent victims of financially irresponsible motorists, *American Tours, Inc. v. Liberty Mutual Insurance Co.*, 315 N.C. 341, 338 S.E.2d 92 (1986); *Moore v. Hartford Fire Insurance Company Group*, 270 N.C. 532, 155 S.E.2d 128 (1967) — they also support the equally important policy of requiring sellers of goods and services to deliver what they have been paid for. In this case USF&G was paid to insure Mrs. Sproles against being damaged by a financially irresponsible motorist and while her damages by such a motorist remain unpaid USF&G's obligation to her should not be reduced or eliminated because part of her loss has been paid by someone else.

B.

*The holding that USF&G's policy limit obligation to Mrs. Sproles was not reduced by the underinsured motorist insurance payment that she received from Travelers.*

[8] This holding is correct and we affirm it. USF&G's contention to the contrary is based upon this provision of its policy:

If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum limit of liability

for your injuries under all the policies shall not exceed the highest applicable limit of liability under any one policy.

This policy provision conflicts with G.S. 20-279.21(b)(4) and is therefore unenforceable. In addition to making the underinsured motorist coverage limits in an automobile policy the same as the liability limits, unless the policyholder rejects the coverage, *Proctor v. North Carolina Farm Bureau Mutual Insurance Company*, 324 N.C. 221, 376 S.E.2d 761 (1989), G.S. 20-279.21(b)(4) requires that multiple underinsured motorist coverage available to an innocently injured accident victim be stacked or aggregated. *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989). This statutory mandate would avail nothing if insurance carriers could limit an injured insured's recovery to the maximum amount due under one policy.

As to plaintiffs' appeal—affirmed in part; reversed in part.

As to defendant USF&G's appeal—affirmed.

Judges COZORT and GREENE concur.