881 P.2d 526

**Terry CABERTO and Cyndi Caberto, Plaintiffs–Appellants,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, Hawai'i Insurance Consultants, Ltd., Defendants–Appellees,**

and

**John Doe 1–10, Doe Corporation 1–10, and Doe Entity 1–10, Defendants.**

No. 15890.

Supreme Court of Hawai'i.

Sept. 28, 1994.

Ronald G.S. Au, Connie G.W. Meredith and Gerald H. Kurashima, on the briefs, Honolulu, for plaintiffs-appellants.

Carleton B. Reid and John T. Hassler, on the briefs, Honolulu, for defendants-appellees.

Before MOON, C.J., LEVINSON, NAKAYAMA and RAMIL, JJ., and HUDDY, Circuit Judge, in place of KLEIN, J., recused.

MOON, Chief Justice.

Plaintiffs-appellants Terry and Cyndi Caberto (collectively, the Cabertos) appeal from the First Circuit Court's order confirming an arbitration award in connection with the Cabertos' claim for underinsured motorist (UIM) benefits against defendants-appellees National Union Fire Insurance Company and Hawai'i Insurance Consultants, Ltd. (collectively, National Union). On appeal, the Cabertos argue that the circuit court erred in reducing the amount of UIM benefits awarded in the arbitration by allowing offsets for no-fault and workers' compensation benefits received by Terry Caberto. We agree.

## I. BACKGROUND

On October 27, 1988, Terry Caberto (Terry) was involved in an automobile accident with David Butler. Terry settled his claim with Butler's insurer for the policy limits of $35,000.00. Because Terry's damages exceeded $35,000.00, the Cabertos filed a claim for UIM benefits with their insurer, National Union. Having received no response, the Cabertos filed the instant action against National Union for UIM benefits.

Pursuant to the arbitration clause contained in National Union's policy, the parties stipulated to stay all proceedings, and the matter was submitted to arbitration. The parties agreed that the arbitrators would determine only the amount of total damages; the set-off issues were not to be decided by the arbitrator.[1] On June 3, 1991, the arbitrators issued their decision, awarding damages as follows:

---

**1.** We note that subsequent to the arbitration, the Cabertos filed a motion to compel further arbitration in order to allow the arbitrators the opportunity to determine the offset/deduction issues. In opposition, National Union pointed out that the parties had agreed that the arbitrators were not to decide the legal question of offsets, which agreement was verified by the statement of the arbitrators in their decision that "[t]he arbitrators were requested to make findings of Special and General Damages only." The Cabertos' motion was denied.

Special Damages: $ 93,361.72
General Damages: 45,000.00
TOTAL: $138,361.72

The "limits of liability" provision under National Union's UIM endorsement provides in relevant part:

Any coverage afforded under this endorsement shall apply over and above any amounts available to an **"insured"** because of the bodily injury:

1. From or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A [liability coverage].

2. Under any of the following:

   a. workers' compensation law;

   b. disability benefits law or similar law; or

   c. no-fault coverage.

Any payment under this coverage will reduce any amount that person is entitled to recover under Part A or Part B [uninsured motorist coverage] of this policy.

Based on this "setoff provision," National Union tendered its check to the Cabertos in the amount of $37,259.24, which amount represented the balance after deducting: (1) the $35,000.00 paid by Butler's insurance; (2) no-fault benefits of $11,950.00; and (3) workers' compensation benefits of $54,152.48.

On October 3, 1991, the Cabertos filed their "Motion to Confirm Arbitration Award and Determine Offset and Deduction as May be Applicable." The Cabertos did not take issue with National Union's deduction of $35,000.00, the amount received from Butler's liability insurance carrier; however, they argued that offsets for no-fault and workers' compensation benefits received should not be allowed. National Union argued that it was entitled to reduce the arbitration award pursuant to the setoff provision contained in the policy. Subsequent to the hearing on the Cabertos' motion, the circuit court confirmed the award and allowed Na-

tional Union to make the following deductions:

$35,000.00 for the tortfeasor's settlement,

$11,950.00 for no-fault benefits, and

$42,152.48[2] for workers' compensation benefits.

Thereafter, the Cabertos filed a timely notice of appeal.

## II.  DISCUSSION

### A.  No–Fault Benefits

■  Based on our recent decision in *Sol v. AIG Hawai'i Insurance Company*, 76 Hawai'i 304, 875 P.2d 921 (Sup.1994), we conclude that the circuit court erred in reducing the arbitration award by the amount of no-fault benefits paid. The insureds in *Sol* filed a claim for uninsured motorist (UM) benefits against AIG Hawai'i Insurance Company (AIG) for damages sustained as a result of an accident involving an uninsured motorist. Pursuant to the terms of AIG's policy, the matter was submitted to arbitration. Subsequent to arbitration, AIG tendered a check to the insureds, deducting the amount of no-fault benefits it had previously paid. The insureds brought a declaratory relief action, seeking a determination regarding the validity of the setoff provision contained in AIG's policy, which provision is similar to the setoff provision at issue in the case at bar.

Based on an analysis of Hawai'i's no-fault statute, specifically, Hawai'i Revised Statutes (HRS) § 431:10C–307 (rights of subrogation or reimbursement), this court concluded that "because the legislature intended to prevent no-fault insurers from subrogating against the optional additional coverages, *uninsured* motorist coverage is exempt from no-fault reimbursement." *Sol*, 76 Hawai'i at 308, 875 P.2d at 925 (emphasis added). Thus, we held AIG's contractual provision dictating reimbursement of no-fault benefits from UM benefit proceeds to be invalid.

**2.** Although Terry received $54,152.48 in workers' compensation benefits, the circuit court apparently reduced that amount by $12,000.00, which represented the amount of future benefits Terry agreed to waive in settling the subrogation lien with his employer's workers' compensation carrier, thus leaving a balance of $42,152.48. We also note that in addition to waiving $12,000.00 in future workers' compensation benefits, Terry reimbursed the workers' compensation carrier a total sum of $13,228.34 out of the proceeds received from Butler's liability carrier.

When the insurance law was recodified in 1988, both the House and Senate agreed that UM and UIM coverage be treated the same, that is, "[UIM] coverage would be treated in the same manner that [UM] coverage is presently treated, i.e., as a means of protection, through voluntary insurance, for persons who are injured by motorist whose liability policies are inadequate to pay for personal injuries." Hse.Conf.Comm.Rep. No. 126–88, in 1988 House Journal, at 826; *see also* Sen.Conf.Comm.Rep. No. 215, in 1988 Senate Journal, at 675.

■ Having exempted *uninsured* motorist coverage from no-fault reimbursement, we conclude that *underinsured* motorist coverage is likewise exempt from no-fault reimbursement. Therefore, based on *Sol*, we hold that the provision in National Union's policy requiring reimbursement of no-fault benefits from UIM benefit proceeds is void.

### B. *Workers' Compensation Benefits*

National Union contends that the "setoff provision" of its policy clearly and unambiguously provides that "any coverage afforded under the provision shall apply 'over and above' amounts available from ... worker's compensation[.]" Thus, National Union submits that it is entitled to reduce the amount of UIM benefits by the amount of workers' compensation benefits received by the insured. The Cabertos, on the other hand, essentially argue that the setoff provision is void as against public policy.

Although the validity of an insurance policy's "setoff provision" that requires reduction of optional additional coverage (UM or UIM coverage) based on the amount of workers' compensation benefits received by the insured has been widely litigated in other states, Hawai'i's appellate courts have yet to consider this specific issue, and we are confronted at the outset with a split among jurisdictions that have addressed the matter. However, we are persuaded by the rationale of the majority of jurisdictions that have invalidated such provisions as being void against legislative intent and public policy. *See, e.g., Ohio Casualty Group v. Owens*, 99 N.C.App. 131, 392 S.E.2d 647 (1990) (insurer not entitled to reduce UIM liability limits by amount of workers' compensation benefits paid to insured by insured's employer); *Sproles v. Greene*, 100 N.C.App. 96, 394 S.E.2d 691 (1990) (workers' compensation recovery could not be offset against an insured's UIM policy entitlement); *Continental Ins. Co. v. Fahey*, 106 N.M. 603, 747 P.2d 249 (1987) (reducing UM recovery by amount injured party receives in workers' compensation contravenes legislative intent of UM statute and is therefore unenforceable); *Allstate Ins. Co. v. Welch*, 45 Wash.App. 740, 727 P.2d 268 (1986) (policy provision which limits or reduces amount of UIM coverage mandated by statute is void as against public policy); *Britton v. Safeco Ins. Co. of America*, 104 Wash.2d 518, 707 P.2d 125 (1985) (UIM endorsement, which contained workers' compensation setoff clause, issued or renewed after effective date of new UIM statute and before accident was void); *Fryer v. National Union Fire Insurance Company*, 365 N.W.2d 249 (Minn.1985) (policy provision providing for reduction of benefits payable by sums paid or payable under workers' compensation was unenforceable); *Thamert v. Continental Cas. Co.*, 621 P.2d 702 (Utah 1980) (insurer providing UM coverage should not be permitted to offset workers' compensation payments received by plaintiff); *State Farm Mut. Ins. Co. v. Fireman's Fund American Ins. Co.*, 550 S.W.2d 554 (Ky.1977) (minimum coverage limits prescribed by UM statute cannot be reduced by condition in policy requiring amount of workers' compensation be offset against such amount); *Sweeney v. Hartford Accident & Indemnity Company*, 136 N.J.Super. 591, 347 A.2d 380 (1975) (any provision in UM coverage that allows reduction of amounts paid to insured pursuant to workers' compensation claim is against public policy and therefore void and unenforceable).

■ We agree with the majority view as expressed by the Cabertos that "the purpose and policy of [UIM] coverage would not be furthered if [National Union] were allowed to offset benefits for workers' compensation benefits received from a third-party insurer." We note that " '[i]nsurance policies are governed by statutory requirements in force and effect at the time such policies are written.' "

*National Union Fire Ins. Co. v. Ferreira,* 71 Haw. 341, 344, 790 P.2d 910, 912 (1990) (citation omitted). Hawai'i's UIM statute, HRS § 431:10C–302 (1987 Spec. Pamphlet), which was in effect at the time of the accident, provides in pertinent part:

(a) In addition to the no-fault coverages described in section 431:10C–301, every insurer issuing a no-fault policy shall make available to the insured the following optional insurance under the following conditions:

. . . .

(3) Additional coverages and benefits with respect to any injury, death, or any other loss from motor vehicle accidents or from operation of a motor vehicle for which the insurer may provide for aggregate limits with respect to such additional coverage so long as the basic liability coverages provided are not less than those required by section 431:10C–301(b)(1) and (b)(2); [3]

(4) Coverage for loss resulting from bodily injury or death suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles[.]

HRS § 431:10C–302(a)(4). An "underinsured motor vehicle" is defined as "a motor vehicle with respect to the ownership, maintenance or use for which sum of the limits of all bodily injury liability insurance coverage and self-insurance applicable at the time of loss is less than the liability for damages imposed by law." HRS § 431:10C–103(22) (1987 Spec. Pamphlet).

We have repeatedly stated that "[t]his court's primary duty in interpreting and applying statutes is to ascertain and give effect to the legislature's intention to the fullest degree." *Ferreira,* 71 Haw. at 345, 790 P.2d at 913 (citations omitted). "The fundamental starting point for statutory interpretation is the language of the statute itself." *Id.* The language of the UIM statute, however, in no way suggests that the legislature intended that UIM benefits be reduced by the amount of workers' compensation benefits received by an insured.

The legislative intent in requiring that UIM coverage be offered to the public was to provide additional protection to victims involved in motor vehicle accidents:

The purpose of this bill is to provide an increase in the no-fault benefit amounts and the liability and uninsured coverage amounts under the no-fault law, and to further provide new optional "underinsured" motorist coverage under said no-fault law. *The purpose of this bill is in line with the overall intent of the no-fault law to provide speedy and adequate protection to persons injured in motor vehicle accidents at the least possible cost.*

. . . .

Testimony on the "underinsured" coverage provision indicated that *such optional coverage would provide additional protection to the injured party.* Since the intent of the no-fault law is to provide speedy and adequate protection to the injured party at the least possible cost, your Committee is in favor of the underinsured coverage.

Sen.Stand.Comm.Rep. No. 689, in 1985 Senate Journal, at 1181 (emphasis added). As previously noted, both the House and Senate agreed in 1988, when the statute was recodified, that "[u]nder this bill, [UIM] coverage would be treated in the same manner that [UM] coverage is presently treated, i.e. *as a means of protection, through voluntary insurance, for persons who are injured by motorist whose liability policies are inadequate to pay for personal injuries.*" Hse. Conf.Comm.Rep. No. 126–88, in 1988 House Journal, at 826 (emphasis added); Sen. Conf.Comm.Rep. No. 215, in 1988 Senate Journal, at 675.

As the Court of Appeals of North Carolina stated in *Sproles,* reducing the UIM carrier's liability to its insured by the amount of workers' compensation benefits she has received

would disserve the dominant public policy behind the Financial Responsibility Act,

---

**3.** HRS § 431:10C–301(b)(1) and (b)(2) (1987 Spec. Pamphlet) mandate coverage of "not less than $35,000 for all damages arising out of accidental harm sustained by any one person" and "not less than $10,000 for all damages arising out of injury to or destruction of property," respectively.

that of making insurance available for the compensation of innocently injured accident victims, and leave unfulfilled the Sproles' purpose in buying the coverage in the first place. Nothing in the [Motor Vehicle Safety and Financial Responsibility Act] suggests to us that our General Assembly intended to authorize any such absurdity.

*Sproles,* 100 N.C.App. at 107, 394 S.E.2d at 697. The plaintiffs in *Sproles* were seriously injured in an automobile accident while on a business trip. The tortfeasor's liability to one of the plaintiffs, Mrs. Sproles, was established at $750,000.00. Having received the policy limits of $25,000.00 from the tortfeasor's liability carrier, Mrs. Sproles made a claim for UIM benefits to United States Fidelity and Guaranty Company (USF & G), her personal automobile liability insurer. USF & G's UIM policy contained a "limit of liability" provision substantially similar to the setoff provision in the instant case.[4] The trial court held that USF & G was not entitled to offset the amount of workers' compensation benefits received by Mrs. Sproles, and USF & G appealed.

On appeal, the court noted that USF & G's policy "was not paid for by Mrs. Sproles' employer, she and her husband paid for it; the workers' compensation insurance was not provided by USF & G or an affiliate; and Mrs. Sproles' damages have been established at an amount far in excess of any kind of insurance that is available to her." *Sproles,* 100 N.C.App. at 106, 394 S.E.2d at 697. The court further noted that

USF & G was paid to insure Mrs. Sproles against being damaged by a financially irresponsible motorist and while her damages by such a motorist remain unpaid USF & G's obligation to her should not be reduced or eliminated because part of her loss has been paid by someone else.

*Id.* at 107, 394 S.E.2d at 698. "It is immaterial that the motorist was also a workman protected by workers' compensation. The

coverages are discrete and independent, and premiums were paid for both." *Fahey,* 106 N.M. at 606, 747 P.2d at 252.

In holding a UM insurer's setoff provision void as against public policy, the Superior Court of New Jersey, in *Sweeney,* stated:

If the tortfeasor had been insured, the employee's recovery would not have been reduced by the amount of any workmen's compensation benefits he had received. Accordingly, any provision in an [UM] policy which reduces the amount payable to the insured because of receipt of workmen's compensation benefits affords a lesser amount of damages than he would have been entitled to receive had the uninsured motorist been properly covered. Any such provision abrogates the intent of the statute and is invalid.

*Sweeney,* 136 N.J.Super. at 595, 347 A.2d at 382–83.

Similarly, in *Fryer,* the plaintiff, an on-duty police officer, was injured when his patrol car was rear-ended by a stolen automobile. The insurer of the stolen automobile denied liability coverage on the ground of nonpermissive use. Thereafter, the plaintiff submitted a claim for UM benefits and requested arbitration pursuant to the terms of the policy. The arbitration panel rendered its decision with respect to liability and damages only, and the award was subsequently confirmed. National Union appealed the confirmation of the award to the Minnesota Court of Appeals, which affirmed; the Supreme Court of Minnesota granted further review.

The Supreme Court of Minnesota addressed, *inter alia,* the issue whether National Union was entitled to reduce its liability for UM benefits by the amount of workers' compensation benefits paid to the plaintiff based on a limitation of liability clause in its policy similar to the provision at issue here. In holding such limitation clause invalid, the court stated:

---

4. USF & G's policy provided in pertinent part: Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:
. . . .

2. Paid or payable because of the bodily injury under any of the following or similar law:
   a. workers' compensation law; or
   b. disability benefits law.

National Union's limitation of liability clause would shift the burden of loss for an auto accident from the auto injury reparations system to the workers' compensation system, and is inconsistent with the legislative coordination of the various reparation payments.

*Fryer,* 365 N.W.2d at 255.

The purpose of UM and UIM benefits is to provide additional insurance coverage to seriously injured persons who had the foresight to contract for such additional coverage. The legislative intent of providing "a means of protection, through voluntary insurance, for persons who are injured by motorists whose liability policies are inadequate to pay for personal injuries," Hse.Conf.Comm.Rep. No. 126–88, in 1988 House Journal, at 826, would not be furthered if National Union is allowed to offset its obligation to pay UIM benefits by the amount of workers' compensation benefits received by its insured.

The Cabertos also contend that National Union's setoff provision is void as against public policy "because it would provide a windfall to the injured person's insurer for a benefit conferred by a third party." On the other hand, National Union, relying on cases supporting the minority view,[5] argues that "[f]ailing to contractually reduce the [UIM] award to recognize the applicable set-offs for worker's compensation ... would result in a 'windfall' for the [Cabertos]." We recognize that our ruling today may inevitably result in a "windfall" to one of the parties; however, as the court in *Sweeney* stated:

> We realize that plaintiff will be entitled to recover both the proceeds of the uninsured motorist policy and the benefits from workmen's compensation without any setoff. However, *it is not the intent of the statute to prefer the liability carrier to the policyholder if there is to be a windfall to one or the other.*
>
> . . . .
>
> ... *In order to effectuate the intent of the statute, the injured party should be able to realize the proceeds of his unin-sured motorist policy free from any reductions which would not be available in a suit against an insured tortfeasor.*

*Sweeney,* 136 N.J.Super. at 595, 347 A.2d at 382–83 (emphasis added).

Citing our decision in *Kang v. State Farm Mutual Automobile Insurance Company,* 72 Haw. 251, 815 P.2d 1020 (1991), National Union essentially contends that by invalidating its limit of liability clause, the Cabertos would recover "damages twice for the same element of loss" and such dual recovery should not be allowed. Although we approved of the policy exclusion in *Kang* and held that such exclusion was not contrary to the intent of the UIM statute or the overall intent of the Hawai'i's no-fault law, we believe National Union's reliance on *Kang* is misplaced.

In *Kang,* the plaintiff, Lucy Kang, was a passenger in a motor vehicle owned by Agnes Kim. Kang was seriously injured when Kim lost control of the vehicle and struck a concrete wall. Kang received policy limits of $35,000.00 from Kim's liability insurance carrier and policy limits of $35,000.00 in UIM benefits from her own automobile insurance policy. Kang also made a claim for UIM benefits under Kim's policy with State Farm. State Farm denied UIM coverage on the ground that the policy definition of an underinsured vehicle excluded the insured (Kim's) vehicle.

We held that by allowing dual recovery of liability and UIM benefits under a *single* policy "this court would, in effect, eliminate the distinction between liability and [UIM] coverage and transform the inexpensive [UIM] coverage into the more expensive liability coverage." *Id.* at 261, 815 P.2d at 1025. Such a ruling, we noted, would frustrate the legislative objective of optional protection at the least possible cost. *Id.*

■ Here, the Cabertos are not seeking dual recovery of benefits under a single policy. As stated previously, "[i]t is immaterial that the motorist was also a workman pro-

**5.** *See, e.g., Parker v. American States Ins. Co.,* 193 Ill.App.3d 671, 140 Ill.Dec. 558, 550 N.E.2d 40 (1990); *Poulos v. Aetna Casualty & Sur. Co.,* 119 R.I. 409, 379 A.2d 362 (1977); *Penta v. Liberty Mutual Ins. Co.,* 51 A.D.2d 125, 380 N.Y.S.2d 124 (1976); *American Ins. Co. v. Tutt,* 314 A.2d 481 (D.C.1974).

tected by workers' compensation. The coverages are discrete and independent, and premiums were paid for both." *Fahey,* 106 N.M. at 606, 747 P.2d at 252. Allowing National Union to offset its liability by the amount of workers' compensation benefits Terry received would (1) defeat the purpose of the Cabertos having purchased the optional additional coverage in the first place, and (2) result in a windfall to National Union merely because Terry happened to be in the course and scope of his employment when he was injured.

### III. *CONCLUSION*

Based on the foregoing, we hold that the provision in National Union's policy requiring reimbursement of no-fault benefits from UIM benefit proceeds is void, and therefore, unenforceable. Consequently, the circuit court's order granting plaintiffs-appellants' motion to confirm arbitration award and determine offset and deductions as may be applicable, filed on December 26, 1991, is reversed to the extent the court allowed deductions for no-fault and workers' compensation benefits.

HUDDY, Circuit Judge, concurring and dissenting.

I agree with the majority that there should be no reduction of the arbitration award by the amount of no-fault benefits. Dispositive of the issue is this court's opinion in *Sol v. AIG Hawai'i Insurance Co.,* 76 Hawai'i 304, 875 P.2d 921 (1994).

With respect to the second subject, I respectfully dissent.

Other states decided this issue on a "public policy" basis.

The language of HRS § 431:10C–302 (1987 Spec. Pamphlet) neither permits nor prohibits the insurance policy provision relating to workers' compensation set-off. Relevant committee reports also offer the court no guidance to determine the legislative intent on the question. On the other hand, the language of the UIM statute merely requires that insurers offer these policies as "optional insurance." Thus, in my view, the legislature did not address this topic and matters of

policy are for the legislature to decide. *Levy v. Kimball,* 51 Haw. 540, 465 P.2d 580 (1970); *Barcena v. The Hawaiian Ins. & Guar. Co., Ltd.,* 67 Haw. 97, 678 P.2d 1082 (1984); *see also Ross v. Stouffer Hotel Company (Hawai'i), Ltd.,* 879 P.2d 1037 (Haw.1994) (Klein, J., concurring and dissenting).

Consistent with the law of damages, I see nothing inherently unfair in awarding a claimant actual losses. *Nobriga v. Raybestos–Manhattan, Inc.,* 67 Haw. 157, 683 P.2d 389 (1984); *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 839 P.2d 10 (1992).