**INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Paul Demet PARTON, Pauline Petty, John Joel Pitts, W. T. Pitts, R. L. Pitts and Annie Pitts Vick, Defendants.**

Civ. No. 340-S.

United States District Court
Middle District North Carolina,
Salisbury Division.

Jan. 25, 1957.

Craighill, Rendleman & Kennedy, Charlotte, N. C., for plaintiff.

Haywood & Denny, Durham, N. C., George R. Uzzell, Salisbury, N. C., Hobart M. Brantley, Spring Hope, N. C., for defendants.

HAYES, District Judge.

This is a civil action brought for declaratory judgment in favor of the plaintiff and against the defendants, in which the plaintiff seeks a judgment declaring it not liable under its insurance policy issued in the name of Paul Demet Parton. The plaintiff alleges that the policy by the rider attached thereto limited to a nonowner policy is inapplicable under Section 2, Subsection 2 as follows: The

insurance does not apply "to any automobile owned by the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse."

Parton was required to obtain insurance for the purpose of meeting the requirement of the financial responsibility statute of North Carolina and being unable to obtain insurance otherwise the Commissioner assigned the risk to the plaintiff who wrote its policy effective the 19th day of January, 1955, and expiring on the same date in 1956, limiting its liability to $5,000 for one person, $10,000 for one accident of bodily injury and $5,000 property damage as embodied under Classification A and B. On the 5th of April, 1955, Parton was operating a 1950 Pontiac automobile which collided with the car driven by John Joel Pitts and in which the other defendants named were occupants, and as a result of the collision the Pitts car was greatly damaged and the occupants of his car sustained personal injuries and all the defendants asserted claims for damages against Parton as a result of the collision. It is the contention of the plaintiff that: First, Parton was the owner of the car involved. Second, if he was not the owner and his sister-in-law, Pauline Petty, was the owner, she was, nevertheless, a member of his household and that in either event, the policy doesn't cover this accident and prays for a declaratory judgment to that effect.

The circumstances concerning the ownership of the car are set forth in detail in the findings of fact, constituting a part of the record in this case, but for clarity, the gist of the facts show that Parton negotiated for the purchase of this car from White Bros. Motor Company at Concord, North Carolina, on the 5th day of January, 1955. A sales agreement was entered into between him and that company as to the terms of payment, both of them having signed the so-called sales agreement which is nothing more than a mere statement of the agreed price of $750, with a down payment of $10, $65 to be paid in two days, and $125

in 30 days and the mortgage to be given covering the $500 balance and another payment of $50. On the 14th day of February, 1955, the White Bros. Oldsmobile Company executed a bill of sale or invoice to Miss Pauline Petty of Concord, North Carolina, reciting the purchase price of $750. On the 23rd day of February, 1955, the defendant Parton took Pauline Petty with him to White Bros. Oldsmobile Company, at which time Parton wrote a check, which was never paid, for $80, and Pauline Petty executed a conditional sales contract or mortgage to White Bros. agreeing to pay the sum of $700.92, and that White Bros. Oldsmobile Company then held the title to the motor vehicle, assigned the same and acknowledged it to Pauline Petty and Pauline Petty executed the purchaser's application for a new certificate of title reciting therein the existence of a lien of $700.92 and conditional sales contract dated February 23, 1955, in favor of White Bros. Oldsmobile Company of Concord, North Carolina, and acknowledged the same before a notary public with whom she left the mortgage and the certificate of title and the application for its issuance to Pauline Petty. The car was driven from the garage by the defendant Parton and Pauline Petty with him.

She never operated an automobile and according to her testimony was involved in this matter at the request of Parton who told her that he wanted her to sign up some papers so he could get insurance. No payments were made on the car until the 5th of March, at which time Parton paid $50. The car was subsequently repossessed by White Bros. Oldsmobile Company.

Pauline Petty was a sister-in-law to Parton who married her sister and she had a brother who married his sister. Her parents were dead and for 15 years she had lived in the home of Parton, but she helped out about the house and she also purchased groceries, although nothing seemed to have been said by any of them as to whether any charges were made or not. The evidence doesn't show

that she didn't render service in the home, together with the purchases she made in behalf of the home, sufficient to pay for her board, and the Court did not find from the evidence that she was a member of the household within the meaning of that clause in the insurance policy.

In our view it is not necessary to determine whether Parton was the equitable owner of the car. While it is true that he made the cash payments on the car policy it still remains that he did not execute the mortgage for the payment which constituted by far the greater part thereof, the mortgage being in the sum of $700.92, and the actual cash payments made being only $170.

Under the North Carolina law the evidence might satisfy the establishment of their being tenants in common, as was held in Bullman v. Edney, 232 N.C. 465, 61 S.E.2d 338, but see Lawrence v. Heavner, 232 N.C. 557, 61 S.E.2d 697.

The decision in this case, however, is predicated primarily on the language of the statute involved. We had occasion to consider aspects of this statute and discuss them in Sanders v. Travelers Indemnity Co., D.C., 144 F.Supp. 742. It is to be noted that this insurance was issued in compliance with the Motor Vehicle Safety and Financial Responsibility Act of North Carolina, General Statutes 20–279.1, and this statute defines a "motor vehicle," "operator," "owner", in addition to other definitions. The operator is defined as every person who is in actual physical control of a motor vehicle and the owner is defined as "a person who holds the legal title of a motor vehicle, or in the event the motor vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with the immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purposes of this article."

The object of the Act was to provide protection to the public and in order to meet the requirements of the Act it was essential to have a definition of who is the owner within the meaning of the Act and the Act explicitly defines the owner as the person who holds the legal title of a motor vehicle rather than one who merely has an equitable claim or title thereto. There can be no controversy under the law of North Carolina about the fact that Pauline Petty was the holder of the legal title. It was in her name and that at most Parton only had a possibility of a resulting trust to the extent of the down payment which he had made which was less than 50% of the cost of the car. But the language of the section involved doesn't stop with the mere definition of the holder of the legal title being the owner. It provides that the mortgagor for the purposes of this statute shall also be the owner. This was inserted in the statute because under the law of North Carolina the mortgagee had the legal title to the mortgaged property, but to avoid that consequence the Legislature specified that the mortgagor would be the owner for the purpose of protecting the public, that the mortgagor had the right to the possession of the vehicle which clearly shows that the Legislature intended to fix the responsibility on the holder of the legal title in fact except where it was mortgaged, in which event it was attached to the mortgagor. There is nothing in the Act which authorizes the insurance company to exclude by the terms of its policy liability of the operator of an automobile if it is an automobile owned by a member of his household, and that clause in the policy being repugnant to and in conflict with the provisions of the Financial Responsibility Act is void and of no effect. Howell v. Travelers Indemnity Co., 237 N.C. 227, at page 229, 74 S.E.2d 610 at page 612.

If the insurer could escape liability by proof that the holder of the legal title was not the owner, it would afford a dangerous avenue by which the public would still be without the Financial Re-

sponsibility Provision which the Legislature intended for the protection of the public. In Butler v. Case, 161 Ohio St. 288, 118 N.E.2d 836, the Ohio Supreme Court held that their statute could not be defeated on the theory of a resulting trust.