OHIO CASUALTY GROUP, PLAINTIFF v. CHRISTINE R. OWENS, JULIAN A. COLEMAN, ALAMANCE COUNTY HOSPITAL, GRAIN DEALERS MUTUAL INS. COMPANY, AND AMERISURE INSURANCE COMPANIES, DEFENDANTS

No. 8926SC689

(Filed 19 June 1990)

**Insurance § 69 (NCI3d) — underinsured motorist coverage — reduction in benefit by amount of workers' compensation paid improper**

Plaintiff automobile liability insurance carrier which provided uninsured/underinsured motorist coverage to defendant who was injured within the course and scope of her employment was not entitled to reduce its $50,000 limit in underinsured motorist coverage by the $20,392.70 in workers' compensation benefits paid by defendant insurance company. N.C.G.S. § 20-279.21(b)(4) and (e); N.C.G.S. § 97-10.2(f), (g) and (h).

**Am Jur 2d, Automobile Insurance §§ 322, 326, 328.**

APPEAL by defendants Amerisure Insurance Companies and Alamance County Hospital from Order of *Judge Frank W. Snepp, Jr.*, entered 2 February 1989 in MECKLENBURG County Superior Court. Heard in the Court of Appeals 6 December 1989.

*Hedrick, Eatman, Gardner & Kincheloe, by Scott C. Lovejoy, for plaintiff appellee.*

*William Benjamin Smith for defendant appellant, Christine R. Owens.*

*Carruthers & Roth, P.A., by Charles J. Vinicombe, for defendant appellants, Alamance County Hospital and Amerisure Insurance Companies.*

COZORT, Judge.

Plaintiff Ohio Casualty Group (Ohio Casualty) initiated the case below to have the court declare its legal obligation to defendant Christine R. Owens.

On 22 May 1985, Ms. Owens, driving her automobile and acting within the course and scope of her employment, collided with a vehicle driven by Julian A. Coleman. He was insured by Grain Dealers Mutual Insurance Company (Grain Dealers), which has

stipulated that it is prepared to tender its policy limit of $25,000. Workers' compensation insurance for Ms. Owens' employer Alamance County Hospital was provided by Amerisure Insurance Companies (Amerisure). By 16 March 1987, Amerisure on behalf of Ms. Owens' employer had paid her $20,392.70 in medical expenses and compensation benefits.

At the time of the accident, Ms. Owens' automobile liability insurance contract with Ohio Casualty provided "uninsured/underinsured motorist coverage" to a maximum of $50,000. Under that provision she made a claim for $25,000 (the difference between her policy limit and the $25,000 payable by Coleman's liability insurer Grain Dealers). Ohio Casualty refused to pay that claim, tendering instead $4,607.30 as satisfaction in full of its obligation.

Ohio Casualty maintained that it was entitled to reduce its $50,000 limit in underinsured motorist coverage by the $25,000 in liability coverage payable by Grain Dealers and the $20,392.70 in workers' compensation benefits paid by Amerisure. Ohio Casualty based its position on the following provision in its contract with Ms. Owens:

[D]amages under this [uninsured/underinsured motorist] coverage shall be reduced by all sums:

1. Paid because of the bodily injury or property damage [to our insured] by or on behalf of persons or organizations who may be legally responsible . . . ; and

2. Paid or payable because of the bodily injury under any of the following or similar law:

a. workers' compensation law; or

b. disability benefits law.

On 12 May 1988, Ohio Casualty filed a complaint for declaratory judgment. After further pleadings, plaintiff Ohio Casualty and defendant Christine Owens made cross-motions for summary judgment. The trial court denied Ms. Owens' motion, granted Ohio Casualty's motion, and declared

[t]hat Plaintiff's obligation and liability to the Defendant, Christine R. Owens, pursuant to their contract of insurance is $4,607.30 . . . representing the difference between the Plaintiff's $50,000.00 underinsured motorist coverage and the

$25,000.00 of primary coverage heretofore tendered by . . . Grain Dealers [and the] $20,392.70, heretofore paid to . . . Christine R. Owens, by the Defendant, Amerisure . . . .

On appeal, the defendants contend that the trial court's order is contrary to North Carolina's Motor Vehicle Safety and Financial Responsibility Act and applicable case law. We agree.

The fundamental purpose of the Motor Vehicle Safety and Financial Responsibility Act of 1953, N.C. Gen. Stat. §§ 20-279.1 to -.39, "is to compensate the innocent victims of financially irresponsible motorists." *Nationwide Insurance Co. v. Aetna Casualty Co.*, 283 N.C. 87, 90, 194 S.E.2d 834, 836 (1973); *see also Ohio Casualty Ins. Co. v. Anderson*, 59 N.C. App. 621, 625-26, 298 S.E.2d 56, 59 (1982), *cert. denied*, 307 N.C. 698, 301 S.E.2d 101 (1983) (purpose and scope of act). Although uninsured/underinsured motorist coverage can be specifically rejected by an insured, it is not voluntary insurance governed exclusively by the terms of the particular insurance contract. *Lichtenberger v. American Motorists Ins. Co.*, 7 N.C. App. 269, 272-73, 172 S.E.2d 284, 286-87 (1970); *Nationwide Ins. Co. v. Chantos*, 293 N.C. 431, 440, 238 S.E.2d 597, 603-04 (1977). The provisions of the Motor Vehicle Safety and Financial Responsibility Act are, in effect, written "into every automobile liability policy as a matter of law, and, when the terms of the policy conflict with the statute, the provisions of the statute will prevail." *Chantos*, 293 N.C. at 441, 238 S.E.2d at 604 (1977).

In the case below, Ms. Owens' contract with Ohio Casualty was a motor vehicle liability policy as defined in N.C. Gen. Stat. § 20-279.21. Her policy included uninsured/underinsured motorist coverage. Section 20-279.21(b)(4) provides, regarding such coverage, that

Underinsured motorist coverage shall be deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted. *Exhaustion of such liability coverage* for purpose of any single liability claim presented for underinsured motorist coverage shall be deemed to occur when either (a) the limits of liability per claim have been paid upon such claim, or (b) by reason of multiple claims, the aggregate per occurrence limit of liability has been paid. Underinsured motorist coverage shall be deemed

to apply to the first dollar of an underinsured motorist coverage claim beyond amounts paid to the claimant *pursuant to the exhausted liability policy.*

> In any event, *the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the owner's underinsured motorist coverages provided in the owner's policies of insurance*; it being the intent of this paragraph to provide to the owner, in instances where more than one policy may apply, the benefit of all limits of liability of underinsured motorist coverage under all such policies: Provided that this paragraph shall apply only to nonfleet private passenger motor vehicle insurance as defined in G.S. 58-40-15(9) and (10). [Emphases added.]

Section 20-279.21(b)(4) allows an insurer to reduce its uninsured/underinsured coverage only by the amount of liability insurance in force at the time of the accident. Moreover, our courts have repeatedly held that where policy terms purporting to exclude certain risks from uninsured/underinsured coverage are in conflict with the provisions of the Motor Vehicle Safety and Financial Responsibility Act such exclusions are unenforceable. *See, e.g., Indiana Lumbermens Mutual Insurance Co. v. Parton,* 147 F. Supp. 887 (M.D.N.C. 1957); *Crowder v. N.C. Farm Bureau Mut. Ins. Co.,* 79 N.C. App. 551, 340 S.E.2d 127, *disc. review denied,* 316 N.C. 731, 345 S.E.2d 387 (1986).

The Legislature's intent with regard to N.C. Gen. Stat. § 20-279.21(b)(4) is plain when it is read in conjunction with the Workers' Compensation Act. N.C. Gen. Stat. § 97-10.2 provides for the subrogation of the workers' compensation insurance carrier (here Amerisure) to the employer's right, upon reimbursement of the employee, to any payment, including uninsured/underinsured motorist insurance proceeds, made to the employee by or on behalf of a third party as a result of the employee's injury. Section 97-10.2 reads, in pertinent part, as follows:

(f) (1) If the employer has filed a written admission of liability for benefits under this Chapter with . . . the Industrial Commission, then any amount obtained by any person by settlement with, judgment against, or otherwise from the third party by reason of such injury or death shall be dis-

OHIO CASUALTY GROUP v. OWENS

[99 N.C. App. 131 (1990)]

bursed by order of the Industrial Commission for the following purposes and in the following order of priority:

a. First to the payment of actual court costs taxed by judgment.

b. Second to the payment of the fee of the attorney representing the person making settlement or obtaining judgment, and except for the fee on the subrogation interest of the employer such fee shall not be subject to the provisions of § 90 of this Chapter [G.S. 97-90] but shall not exceed one third of the amount obtained or recovered of the third party.

c. *Third to the reimbursement of the employer for all benefits by way of compensation or medical treatment expense paid or to be paid by the employer* under award of the Industrial Commission.

d. Fourth to the payment of any amount remaining to the employee or his personal representative.

\* \* \* \*

(g) *The insurance carrier affording coverage to the employer under this Chapter shall be subrogated to all rights and liabilities of the employer* hereunder but this shall not be construed as conferring any other or further rights upon such insurance carrier than those herein conferred upon the employer, anything in the policy of insurance to the contrary notwithstanding.

(h) *In any proceeding against or settlement with the third party, every party to the claim for compensation shall have a lien to the extent of his interest under (f) hereof upon any payment made by the third party by reason of such injury or death, whether paid in settlement, in satisfaction of judgment, as consideration for covenant not to sue, or otherwise and such lien may be enforced against any person receiving such funds.* Neither the employee or his personal representative nor the employer shall make any settlement with or accept any payment from the third party without the written consent of the other and no release to or agreement with the third party shall be valid or enforceable for any purpose unless both employer and employee or his personal represent-

ative join therein; provided, that this sentence shall not apply if the employer is made whole for all benefits paid or to be paid by him under this Chapter less attorney's fees as provided by (f)(1) and (2) hereof and the release to or agreement with the third party is executed by the employee. [Emphasis added.]

Applied to the case below, N.C. Gen. Stat. § 20-279.21(b)(4) mandates that Ms. Owens recover $25,000 from Ohio Casualty (the difference between the $50,000 maximum in uninsured/underinsured motorist coverage for which she contracted and the $25,000 in liability insurance payable to her from Grain Dealers). Pursuant to § 97-10.2 defendant Amerisure will have a lien on these insurance proceeds for $20,392.70 in workers' compensation benefits already paid to Ms. Owens on behalf of her employer, defendant Alamance County Hospital. Thus, she will recover a net total of $50,000.

Plaintiff Ohio Casualty contends that, notwithstanding §§ 20-279.21(b)(4) and 97-10.1(f), (g), and (h), it is entitled to reduce the coverage it contracted to provide by the $20,392.70 in workers' compensation benefits paid to defendant Christine Owens. Plaintiff's argument is based on N.C. Gen. Stat. § 20-279.21(e) and *Manning v. Fletcher*, 324 N.C. 513, 379 S.E.2d 854 (1989).

Section 20-279.21(e) provides that a

motor vehicle liability policy need not insure against loss from any liability for which benefits are in whole or in part either payable or required to be provided under any workmen's compensation law nor any liability for damage to property owned by, rented to, in charge of or transported by the insured.

Our Supreme Court has noted that two "public policies are inherent in N.C.G.S. § 20-279.21(e). First, the section *relieves the employer of the burden of paying double premiums* (one to its workers' compensation carrier and one to its automobile carrier), and second, the section denies the windfall of a double recovery to the employee." *Manning*, 324 N.C. at 517, 379 S.E.2d at 856 (emphasis added).

As *Manning* recognized, § 20-279.21(e) is directed at automobile liability policies secured by employers for the benefit of their employees. At issue in *Manning* was a liability policy including uninsured/underinsured motorist coverage that had been provided by an employer. In the case below, by contrast, Ms. Owens, not her employer, contracted and paid for uninsured/underinsured motorist coverage. Because she is provided this coverage only by

her own liability insurance policy and because of Amerisure's lien on insurance proceeds in the amount of workers' compensation benefits it has provided, Ms. Owens will not recover twice for the same injury. Thus, plaintiff's reliance on *Manning* is misplaced.

For the reasons stated above, the trial court's order of 2 February 1989 is reversed and the cause remanded for the entry of judgment for defendants Owens, Alamance County Hospital, and Amerisure Insurance Companies on the issue of plaintiff's liability pursuant to the insurance contract.

Reversed and remanded.

Judges JOHNSON and LEWIS concur.