LIBERTY MUTUAL INSURANCE COMPANY AND STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY, PLAINTIFFS V. PATRICIA E. DITILLO, EXECUTRIX OF
THE ESTATE OF JOHN JOSEPH DITILLO; PAULA C. BURGOON, ADMINISTRATRIX OF
THE ESTATE OF RALPH JEAN CLARK; DONNA T. STILWELL, ADMINISTRATRIX OF THE
ESTATE OF CHARLES BRUCE STILWELL; RELIANCE INSURANCE COMPANY; AND
DAY & ZIMMERMAN, INC., DEFENDANTS

No. COA96-487

(Filed 1 April 1997)

1. **Workers' Compensation § 86 (NCI4th)— uninsured motorist benefits—lien by compensation carrier**

    Pursuant to N.C.G.S. § 97-10.2, a workers' compensation car-
    rier had a right to a lien on uninsured motorist benefits paid to
    employees.

    **Am Jur 2d, Workers' Compensation §§ 474, 475, 478.**

2. **Insurance § 515 (NCI4th)— automobile accident—UM coverage—exclusion upon benefit to compensation carrier—enforceable against noninsureds**

    Passengers in a rental car provided by their employer to the
    driver were not "persons insured" under the driver's personal
    automobile policy where the rental car was not listed as an
    insured vehicle in the driver's policy, and the passengers were not
    named insureds, residents of the driver's household, or passen-
    gers in a vehicle insured by the policy. Therefore, provisions of
    the driver's policy limiting and excluding uninsured motorist cov-
    erage to the extent a workers' compensation carrier would bene-
    fit do not conflict with the Motor Vehicle Safety and Financial
    Responsibility Act and are enforceable against the employee-
    passengers.

    **Am Jur 2d, Automobile Insurance §§ 293, 294.**

    **Uninsured motorist coverage: validity of exclusion of
    injuries sustained by insured while occupying "owned"
    vehicle not insured by policy. 30 ALR4th 172.**

3. **Insurance § 515 (NCI4th)— automobile insurance—UM coverage—exclusion upon benefit to compensation carrier— unenforceable against first class insured**

    Provisions of personal automobile policies limiting and
    excluding uninsured motorist coverage to the extent a workers'
    compensation carrier would benefit were unenforceable against

LIBERTY MUT. INS. CO. v. DITILLO

[125 N.C. App. 701 (1997)]

first class insureds· under the policies even as to uninsured motorist coverage above the statutory minimum because N.C.G.S. § 20-279.2(b)(3) requires mandatory uninsured motorist coverage equal to the policy's general liability coverage.

**Am Jur 2d, Automobile Insurance §§ 293, 294.**

**Uninsured motorist coverage: validity of exclusion of injuries sustained by insured while occupying "owned" vehicle not insured by policy. 30 ALR4th 172.**

4. **Workers' Compensation § 85 (NCI4th)—UM insurance proceeds—judgment proof tortfeasor—apportionment between compensation carrier and insureds—trial court without authority**

The trial court correctly held that it did not have the discretion to apportion uninsured motorist proceeds, pursuant to N.C.G.S. § 97-10.2, between the workers' compensation carrier and the estates of the first class insureds because there was not a "judgment" insufficient to satisfy the compensation carrier's lien even though the parties stipulated that the uninsured motorist was judgment proof.

**Am Jur 2d, Workers' Compensation § 451.**

**Unsatisfied claim and judgment statutes: validity and construction of provisions for deduction from award of sums collectible by claimant from other sources. 7 ALR3d 836.**

Judge GREENE concurring in part and dissenting in part.

Appeal by defendants from judgment entered 1 February 1996 by Judge William H. Helms in Union County Superior Court. Heard in the Court of Appeals 14 January 1997.

On 31 January 1991 Charles Bruce Stilwell (Stilwell), John Joseph Ditillo (Ditillo), and Ralph Jean Clark (Clark) died in a motor vehicle accident on U.S. Highway 601 in Union County, North Carolina. The personal representatives of Stilwell, Ditillo, and Clark brought a wrongful death action against the owners and operators of the other vehicles involved in the accident which included Francisco Landaverde Covarrubias, also known as Francisco Landaverde Cobarruvias (Covarrubias). By jury verdict of the Superior Court of Union County, the court found that the negligence of Covarrubias

was the sole proximate cause of the collision which resulted in the deaths of Stilwell, Ditillo, and Clark. Covarrubias is judgment proof and was an uninsured motorist as defined by G.S. 20-279.21 and was operating an uninsured vehicle at the time of the accident.

At the time of the accident Stilwell, Ditillo and Clark were employees of Day & Zimmerman, Inc. (Day & Zimmerman) and were acting in the course and scope of their employment. Day & Zimmerman leased a 1991 Dodge automobile for Stilwell's use. At the time of the accident Stilwell was driving and Ditillo and Clark were riding in the 1991 Dodge. Under the Liberty Mutual and State Farm policies, the Dodge automobile was not listed as an insured vehicle. Reliance Insurance Company (Reliance) insured Day & Zimmerman for workers' compensation claims.

Day & Zimmerman and Reliance filed with the North Carolina Industrial Commission written admissions of liability for the deaths of Stilwell, Ditillo, and Clark. Under the Workers' Compensation Act, Day & Zimmerman and Reliance are liable to the Donna T. Stilwell, Patricia E. Ditillo, and the three daughters of Ralph Jean Clark in the amounts of $162,400.00, $162,400.00, and $130,997.62 respectively.

Prior to the accident Liberty Mutual Insurance Co. (Liberty Mutual) had issued and delivered to Mr. and Mrs. Stilwell, named insureds, its policy of personal automobile insurance (Liberty Mutual policy). The Liberty Mutual policy provided for uninsured liability limits of $100,000.00 per person and $300,000.00 per accident. Also, prior to the accident State Farm had issued and delivered to Ralph Jean Clark, named insured, its policy of personal automobile insurance (State Farm policy). The State Farm policy provided for uninsured liability limits of $100,000.00 per person and $300,000.00 per accident. It is not disputed that at all pertinent times both the Liberty Mutual and State Farm policies were in full force and effect and there has been full compliance by the insureds with all terms of the policies.

On 2 March 1993 plaintiffs filed a complaint seeking a declaratory judgment of their legal obligations under their respective policies. On 1 February 1996 the trial court entered judgment denying coverage to the Ditillo and Clark estates under the Liberty Mutual policy. Also, the trial court found that the Stilwell and Clark estates were each entitled to coverage in the amount of $25,000.00, the mandatory coverage set forth in the Financial Responsibility Act, from their respective insurers; however, the trial court found that Reliance was entitled to a

workers' compensation lien against the independent $25,000.00 recoveries of the Stilwell and Clark estates pursuant to G.S. 97-10.2(f) (1991). Defendants appeal from this judgment.

*Dean & Gibson, L.L.P., by Rodney Dean and D. Christopher Osborn for plaintiff-appellee Liberty Mutual Insurance Company.*

*Golding, Meekins, Holden, Cosper & Stiles, L.L.P., by Harvey L. Cosper, Jr. and Scott A. Beckey for plaintiff-appellee State Farm Mutual Automobile Insurance Company.*

*Kennedy, Covington, Lobdell & Hickman, by Wayne Huckel for defendant-appellant Reliance Insurance Company and Day & Zimmerman, Inc.*

*J. Jerome Miller for defendant-appellant Patricia E. Ditillo.*

*John E. Hodge, Jr. for defendant-appellant Donna T. Stilwell.*

*Ronald H. Cox for defendant-appellant Paula C. Burgoon.*

EAGLES, Judge.

We note that Reliance failed to file their notice of appeal within thirty days from the judgment as required by N.C.R. App. P. 3. However, in our discretion and pursuant to N.C.R. App. P. 2, 21, we treat Reliance's appeal as a petition for writ of certiorari and allow the petition in the interest of justice.

**[1]** We first consider whether the trial court erred in its conclusion that defendant-employees' potential uninsured motorist benefits were subject to a lien in favor of the workers' compensation carrier, Reliance, pursuant to G.S. 97-10.2. While applying G.S. 97-10.2, decisions in North Carolina have consistently upheld the workers' compensation carrier's right to a lien on uninsured motorist benefits paid to the employee by or on behalf of a third party as a result of the employee's injury. *Creed v. R.G. Swain & Son*, 123 N.C. App. 124, 472 S.E.2d 213 (1996); *Martinez v. Lovette*, 121 N.C. App. 712, 468 S.E.2d 251 (1996); *Bailey v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 47, 434 S.E.2d 625 (1993); *Ohio Casualty Group v. Owens*, 99 N.C. App. 131, 392 S.E.2d 647, *disc. review denied*, 327 N.C. 484, 396 S.E.2d 614 (1990). Defendant-employees here have advanced no new arguments or authorities. Accordingly, we respectfully decline to address this issue again here and conclude that the workers' compensation car-

rier, Reliance, has a right to a lien on employee-defendants' potential uninsured motorist benefits.

**[2]** We next consider whether the trial court correctly concluded that the limitations and exclusions of the Liberty Mutual and State Farm policies denying uninsured motorist coverage are enforceable against employee-defendants. The estates of Stilwell, Ditillo and Clark contest the enforceability of the limitations and exclusions of the Liberty Mutual policy, only the Clark estate contests the enforceability of the limitations and exclusions of the State Farm policy. However, because the provisions at issue of the State Farm and Liberty Mutual policies are identical, we will discuss them together.

The uninsured motorist limitation of liability provision provides,

Any amount otherwise payable for damages under this coverage shall be reduced by all sums:

. . . .

2. Paid or payable because of the **bodily injury** under any of the following or similar law:

a. workers' compensation law; . . . .

Similarly, the exclusionary provision provides:

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. workers' compensation law; . . . .

In essence, both of these provisions deny coverage to the extent that coverage may benefit a workers' compensation carrier. Plaintiffs attempt to distinguish the application of appellate decisions on the grounds that one provision is a limitation of liability and the other is an exclusion; however, we treat them the same because they have the same practical effect. Moreover, even though the exclusionary language above has not previously been brought to the attention of this court, the exclusionary language did exist in policies where this Court previously has addressed the enforceability of identical limitation of liability provisions. *See Bailey v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 47, 54-55, 434 S.E.2d 625, 630 (1993); *Hieb v. St. Paul Fire & Marine Ins. Co.*, 112 N.C. App. 502, 506, 435 S.E.2d 826, 828 (1993).

In our recent decision, *McMillian v. N.C. Farm Bureau Mutual Ins. Co.*, 125 N.C. App. 247, 480 S.E.2d 437 (1997), this Court encountered an issue almost identical to the one presented here. The *McMillian* Court found exclusionary language of a private automotive insurance policy that reduced the insured's coverage to the extent that it would benefit a workers' compensation carrier was unenforceable where the exclusionary language conflicted with the Motor Vehicle Safety and Financial Responsibility Act of 1953. *See Ohio Casualty Group v. Owens*, 99 N.C. App. 131, 133, 392 S.E.2d 647, 649, *disc. review denied*, 327 N.C. 484, 396 S.E.2d 614 (1990). Relying on one North Carolina Supreme Court decision, *Manning v. Fletcher*, 324 N.C. 513, 517, 379 S.E.2d 854, 856, *reh'g denied*, 325 N.C. 277, 384 S.E.2d 517 (1989), and several decisions by this Court, *Bailey v. Nationwide Mutual Ins. Co.*, 112 N.C. App. at 54-55, 434 S.E.2d at 630, *Hieb v. St. Paul Fire & Marine Ins. Co.*, 112 N.C. App. at 506, 435 S.E.2d at 828), *Ohio Casualty Group v. Owens*, 99 N.C. App. 131, 392 S.E.2d 647, *disc. review denied*, 327 N.C. 484, 396 S.E.2d 614 (1990), *Sproles v. Green*, 100 N.C. App. 96, 105-07, 394 S.E.2d 691, 697-99 (1990), *reversed in part on other grounds*, 329 N.C. 603, 407 S.E.2d 497 (1991), the *McMillian* Court reasoned that because (1) the uninsured motorist policies are personal automobile policies not purchased by the employer, (2) the insureds will not obtain a double recovery, and (3) the worker's compensation policy and uninsured motorist policy are not issued by the same entity, the insureds were entitled to recover the uninsured motorist policy limits despite policy provisions denying coverage to the extent any proceeds would benefit a workers' compensation carrier. 125 N.C. App. at ——, 480 S.E.2d at 440-41. However, the *McMillian* Court did not encounter the same arguments presented here.

The estates of Ditillo and Clark argue that the trial court erred in concluding that Ditillo and Clark did not meet the definition of a person for whom the Motor Vehicle Safety and Financial Responsibility Act would require coverage beyond the terms of the policy. The Ditillo and Clark estates contend that the Financial Responsibility Act does apply to them, and therefore, because the provisions of the Financial Responsibility Act conflict with the limitations and exclusions of the Liberty Mutual policy, they are entitled to recover. *See Ohio Casualty Group*, 99 N.C. App. at 133, 392 S.E.2d at 649.

In order for the Financial Responsibility Act to apply to the Ditillo and Clark estates under the Liberty Mutual policy they must be "persons insured" for purposes of the act. G.S. 20-279.21(b)(3) (1993) provides:

For purposes of this section "persons insured" means the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above or any other person or persons in lawful possession of such motor vehicle.

As the North Carolina Supreme Court explained in *Smith v. Nationwide*, 328 N.C. 139, 143, 400 S.E.2d 44, 47 (1991) a "person insured" pursuant to G.S. 20-279.21(b)(3) is divided into two classes:

"In essence, N.C. Gen. Stat. 20-279.21(b)(3) establishes two 'classes' of 'persons insured': (1) the named insured and, while resident of the same household, the spouse of the named insured and relatives of either and (2) any person who uses with the consent, express or implied, of the named insured, the insured vehicle, and a guest in such vehicle." Members of the second class are "persons insured" for the purposes of UM and UIM coverage only when the insured vehicle is involved in the insured's injuries. Members of the first class are "persons insured" even where the insured vehicle is not involved in the insured's injuries.

328 N.C. at 143, 400 S.E.2d at 47 (quoting *Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 554, 340 S.E.2d 127, 130, *disc. rev. denied*, 316 N.C. 731, 345 S.E.2d 387 (1986)) (citations omitted). While Stilwell and Clark fit into the first class of persons insured with regard to their respective policies, Ditillo and Clark do not fit into either class of "persons insured" with regard to the Liberty Mutual policy pursuant to G.S. 20-279.21(b)(3). Ditillo and Clark were neither named insureds on the Liberty Mutual policy, residents of the Stilwell household, nor passengers in any vehicle insured by the Liberty Mutual policy. The vehicle in which Stilwell, Ditillo and Clark were riding at the time of the accident was a rental car provided by Day & Zimmerman for a company business trip and was not listed as an insured vehicle on the declarations page of the Liberty Mutual policy. Accordingly, we hold the trial court correctly concluded that the Financial Responsibility Act did not apply to Ditillo and Clark under the Liberty Mutual policy, and therefore, the provisions of the Liberty Mutual policy limiting and excluding coverage to the extent a workers' compensation carrier would benefit were enforceable.

**[3]** With regard to Stilwell and Clark as first class insureds under their respective policies, plaintiffs argue that to the extent the insurance coverage is above the minimum limits of the Financial Responsibility Act, it is voluntary, and therefore, the exclusionary language of the policy is enforceable as to that voluntary coverage. *See Government Employees Insurance Co. v. Herndon,* 79 N.C. App. 365, 367, 339 S.E.2d 472, 473 (1986). In support of their position, plaintiffs cite *Government Employees Insurance Co. v. Herndon* in which this Court commented, "[T]o the extent the coverage provided by motor vehicle liability insurance policies exceeds the mandatory minimum coverage required by the statute, the additional coverage is voluntary, and is governed by the terms of the insurance contract." 79 N.C. App. at 367, 339 S.E.2d at 473. However, plaintiffs admit that the North Carolina Supreme Court recently concluded in *Bray v. North Carolina Farm Bureau,* 341 N.C. 678, 462 S.E.2d 650 (1995) that G.S. 20-279.21(b)(3) provided for mandatory uninsured motorist coverage equal to the policy's general liability coverage, not the $25,000.00 statutory minimum. Nevertheless, plaintiffs argue that in *Bray* the Supreme Court interpreted an amended version of G.S. 20-279.21(b)(3) that was not in effect at the time of the accident here. After careful review of the version of G.S. 20-279.21(b)(3) that was in effect at the time of the accident here, we conclude that the Supreme Court's analysis in *Bray* of the amended G.S. 20-279.21(b)(3) is equally applicable to its predecessor statute. Accordingly, we conclude that the limiting and exclusionary provisions of the Liberty Mutual and State Farm policies that reduce coverage to the extent a workers' compensation carrier may benefit are unenforceable because they conflict with the Motor Vehicle Safety and Financial Responsibility Act as in our recent decision in *McMillian v. N.C. Farm Bureau Mutual Ins. Co.*

**[4]** We next consider whether the trial court erred in its determination that it did not have discretion to apportion the uninsured motorist coverage between the workers' compensation carrier, Reliance, and the estate of the first class insureds, Stilwell and Clark, pursuant to G.S. 97-10.2(j), because there was not a judgment insufficient to satisfy the workers' compensation lien. The trial court based its holding on the parties' stipulation that "[i]n determining the extent of insurance coverage liability, the court may treat each case as though a judgment was entered against the uninsured driver in an amount in excess of the combination of all applicable insurance coverages under these policies plus the amount of any applicable work-

**LIBERTY MUT. INS. CO. v. DITILLO**

[125 N.C. App. 701 (1997)]

ers' compensation benefits." The estates of Stilwell and Clark contend that because the parties have also stipulated that the uninsured motorist, Covarrubias, is judgment proof then any "judgment" would be insufficient to satisfy the subrogation claim of Reliance. The estates of Stilwell and Clark urge that because it would be impossible to obtain proceeds from a judgment against Covarrubias that would satisfy the subrogation lien of Reliance, then the trial court is authorized to apportion the coverage from the Liberty Mutual and State Farm policies between the estates of Stilwell and Clark and Reliance. However, the North Carolina Supreme Court, in *Hieb v. Lowery*, 344 N.C. 403, 474 S.E.2d 323 (1996), recently held that "judgment" pursuant to G.S. 97-10.2(j) does not mean available proceeds. Accordingly, we conclude that the trial court correctly held that it did not have the discretion to apportion the uninsured motorist coverage pursuant to G.S. 97-10.2, because there was not a judgment insufficient to satisfy the workers' compensation carrier's lien.

In conclusion, as to employee-defendants' assignments of error that the trial court erred in concluding that there was a workers' compensation lien, we overrule these assignments of error. As to Ditillo and Clark's assignments of error that the trial court erred in holding that they were not entitled to uninsured motorist coverage under the Liberty Mutual policy, we overrule these assignments of error. As to Stilwell and Clark's assignments of error that the trial court erred in holding that the exclusions and limitations of the Liberty Mutual and State Farm policies reduced the uninsured motorist coverage to $25,000.00, we sustain these assignments of error. As to Stilwell and Clark's assignments of error that the trial court erred in holding that it did not have discretion to apportion the uninsured motorist coverage between their estates and the workers' compensation carrier, Reliance, pursuant to G.S. 97-10.2(j), we overrule these assignments of error.

Affirmed in part, reversed in part.

Judge MARTIN, John C., concurs.

Judge GREENE concurs in part and dissents in part.

Judge GREENE concurring in part and dissenting in part:

I agree with the majority that the workers' compensation carrier (Reliance) has a lien (subject to section 97-10.2(j)) on uninsured

motorist benefits paid to the estates of Ditillo, Clark and Stilwell (employees of Day & Zimmerman). I agree that Ditillo and Clark are not "persons insured" within the meaning of the Financial Responsibility Act (Act) and were properly denied uninsured benefits under the Liberty Mutual policy.

### Policy Provisions

I also agree that neither the "limitation of liability" or "exclusionary" provisions of the State Farm and Liberty Mutual policies are effective to preclude payment of uninsured benefits. This Court has consistently held that a "limitation of liability" clause contained in a personal automobile policy is inconsistent with the Act and not enforceable, *e.g.*, *McMillian v. N.C. Farm Bureau Mut. Ins. Co.*, 125 N.C. App. 247, —, 480 S.E.2d 437, — (1997), to the extent of the mandatory minimum coverage required by the Act. *See Government Employees Ins. Co. v. Herndon*, 79 N.C. App. 365, 367, 339 S.E.2d 472, 473 (1986) (coverage above mandatory minimum is voluntary and governed by terms of policy). Although our courts have not addressed the validity of an "exclusionary" clause of the type contained in these policies, the rationale for rejecting the viability of the "limitation of liability" clause applies equally well to the "exclusionary" clause. In both instances the effect is to eliminate uninsured coverage if there is workers' compensation coverage for the injuries.

In this case at the time the policies were issued the insurance companies had no obligation to provide uninsured coverage in excess of the minimum limits of $25,000. N.C.G.S. § 20-279.21(b)(3) (1961)[1]; N.C.G.S. § 20-279.5(c) (1993). Thus any uninsured coverage in excess of the mandatory $25,000 was voluntary and controlled by the "limitations of liability" and "exclusionary" provisions. I therefore agree with the trial court that the Stilwell and Clark uninsured claims must be limited to $25,000, as any additional uninsured coverage is barred by both the "limitation of liability" and "exclusionary" provisions

---

1. This statute was amended in 1992 and now provides that if the insured named in the policy "does not reject uninsured motorist coverage and does not select different coverage limits, the amount of uninsured motorist coverage shall be equal to the highest limit of bodily injury and property damage liability coverage for any one vehicle in the policy." N.C.G.S. § 21-279.21(b)(3) (1993). Under this statute the uninsured coverage is mandatory, at least to the extent the insured does not reject uninsured coverage and does not select an amount of uninsured coverage in excess of "the highest limit of bodily injury and property damage liability coverage for any one vehicle in the policy." *Id.; see Bray v. N.C. Farm Bureau Mut. Ins. Co.*, 341 N.C. 678, 685, 462 S.E.2d 650, 654 (1995).

because of the workers' compensation payments to the Stilwell and Clark estates.

### Section 97-10.2(j)

I also do not agree that the trial court did not have the discretion to determine the amount of the workers' compensation lien on the uninsured benefits. Section 97-10.2(j) grants the trial court the authority to exercise its discretion in determining the amount of the workers' compensation lien if the "judgment" against the negligent party is "insufficient to compensate the subrogation claim" of the workers' compensation carrier. N.C.G.S. § 97-10.2(j) (1991). The amount of the "judgment" is determined by reducing the verdict by "the amount of the workers' compensation benefits received" by the injured party. *Hieb v. Lowery*, 344 N.C. 403, 410, 474 S.E.2d 323, 327 (1996). In this case, there is no jury verdict and the parties stipulated that the trial court was to "treat" the case as though a judgment had been entered against the uninsured driver in an amount in excess of the combination of all uninsured and workers' compensation benefits. In the Clark case the uninsured benefits (under the State Farm policy) are $25,000 and the workers' compensation benefits (paid through the date of the trial) are $130,997.62 for a total of $155,997.62. In other words, in the Clark case the parties have stipulated to a verdict of $156,000 (an amount reasonably in excess of $155,997.62). The "judgment" (within the meaning of section 97-10.2(j) and *Hieb*) in the Clark case is therefore $25,002.38, determined by subtracting the amount of the workers' compensation benefits ($130,997.62) from the amount of the verdict ($156,000). The judgment (in the Clark case) thus is "insufficient to compensate the subrogation claim" of the workers' compensation carrier (Reliance) and the trial court had discretion to determine the amount of the workers' compensation lien. In the Stilwell case, the record does not reveal the amount of workers' compensation benefits received by the estate prior to the date of the trial. It is thus impossible to determine whether the "judgment" is sufficient or insufficient to compensate the workers' compensation carrier. I would therefore remand the Stilwell case for a determination of the amount of workers' compensation benefits received by the Stilwell estate as of the date of the declaratory judgment hearing before Judge Helms. After that amount is determined the trial court shall then apply the same formula utilized above (in the Clark case) to determine if the "judgment" is sufficient to compensate the subrogation claim of the workers' compensation carrier.

*Summary*

In summary, I would affirm the trial court's order denying Ditillo and Clark's claims under the Liberty Mutual policy. I would affirm the order of the trial court that Stilwell and Clark are entitled to uninsured benefits under their respective policies (Liberty Mutual and State Farm) in the amounts of $25,000. I would reverse the finding of the trial court that it did not have discretion to apportion the uninsured proceeds pursuant to section 97-10.2(j) and would remand for the exercise of that discretion.