MARILYN W. BOWSER, Administrator of the Estate of Milton Bernard Bowser, Deceased, Plaintiff v. DEBORAH DELORES WILLIAMS and GLEN ADAM POWELL, Defendants

No. 911SC797

(Filed 3 November 1992)

1. **Insurance § 528 (NCI4th)— UIM coverage—terms of policy— application of Financial Responsibility Act**

The trial court did not err in concluding that Continental Insurance Company provided plaintiff $750,000 UIM coverage, since the policy defined uninsured motor vehicle to include an underinsured motor vehicle; the policy provided uninsured motorist coverage as specified under N.C.G.S. § 20-279.21; and pursuant to N.C.G.S. § 20-279.21(b)(4) UIM coverage was issued in an amount equal to the liability policy limits for bodily injury, which were $750,000, rather than the UM limits of $25,000 per person and $50,000 per accident.

**Am Jur 2d, Automobile Insurance §§ 293-339.**

BOWSER v. WILLIAMS

[108 N.C. App. 8 (1992)]

2. **Insurance § 551 (NCI4th) — two insurance companies as primary UIM carriers — one pro rata clause — one excess clause — error**

The trial court erred in holding that two insurance companies were co-primary UIM carriers, since Continental's policy which contained a pro rata clause provided primary coverage, while Horace Mann's policy which contained an excess clause provided secondary coverage.

**Am Jur 2d, Automobile Insurance §§ 326, 329.**

**Apportionment of liability between liability insurers each of whose policies provide that it shall be "excess" insurance. 69 ALR2d 1122.**

**Apportionment of liability between automobile liability insurers one or more of whose policies provide against any liability if there is other insurance. 46 ALR2d 1163.**

3. **Insurance § 530 (NCI4th) — workers' compensation benefits — no set off from UIM coverage**

An insurance company was not entitled to a set off from its UIM coverage to the extent that workers' compensation benefits were paid or payable to the deceased driver's estate.

**Am Jur 2d, Automobile Insurance §§ 291, 326, 328, 368.**

**Uninsured motorist coverage: validity and effect of policy provision purporting to reduce coverage by amount paid under workmen's compensation law. 24 ALR3d 1369.**

APPEAL by defendants from order of judgment entered 21 March 1991 by *Judge Thomas S. Watts* in GATES County Superior Court. Heard in the Court of Appeals 27 August 1992.

On 11 July 1988 the plaintiff's intestate, Milton Bowser, was driving a tractor trailer truck owned by B & B Lines, Inc. on U.S. Highway 13 in Hertford County. At the same time Deborah Williams was driving a 1975 Buick automobile owned by Glenn Powell. Ms. Williams allegedly pulled her car into the path of Mr. Bowser's truck from a private driveway. The two vehicles collided. Mr. Bowser died from injuries he received in the accident.

The tractor trailer driven by Mr. Bowser was insured by Continental Insurance Company (Continental) under a policy ceded through the North Carolina Reinsurance Facility (Reinsurance Facility). That policy provided liability limits of $750,000 and uninsured

motorist (UM) limits of $25,000 per person and $50,000 per accident. Continental contends that its policy did not provide underinsured motorist (UIM) coverage. The car driven by Williams was insured under a policy issued to Powell by State Farm Mutual Automobile Insurance Company (State Farm) with liability limits of $25,000 per person and $50,000 per accident. At the time of the accident, Mr. Bowser also had a personal insurance policy issued by Horace Mann Insurance Company (Mann) which provided liability and UIM limits of $100,000 per person and $300,000 per accident.

Plaintiff filed suit and subsequently entered into a "RELEASE IN FULL OF ALL CLAIMS" against Williams and Powell in exchange for payment of $25,000 by State Farm to the Administrator of Bowser's estate. The settlement and release was approved by the trial court on 19 June 1990. On 11 February 1991 the plaintiff filed a motion for summary judgment seeking resolution of whether Continental's policy provided UIM coverage and the priority of coverage between Continental and Mann. On 13 February 1991 Continental filed a motion for summary judgment seeking *inter alia* a ruling that Continental's policy does not provide UIM coverage. Finally, on 25 February 1991 Mann filed a motion for partial summary judgment seeking resolution of these issues and a ruling that if the Mann policy does provide UIM coverage, Mann should receive a set off to the extent any amount was paid or payable by any third parties.

On 21 March 1991 the trial court entered an order of summary judgment ruling as follows: (1) the Continental policy provides $750,000 UIM coverage; (2) the Mann policy provides $100,000 of UIM coverage; (3) that as between Continental and Mann any payments available to the plaintiff should be prorated according to their policy limits, including the $25,000 payment by State Farm; and (4) that Continental is entitled to a credit for worker's compensation benefits received by the plaintiff. From entry of judgment both Continental and Mann appeal.

C. *Everett Thompson, II and Ronald G. Penny for plaintiff-appellee Marilyn W. Bowser.*

*Hedrick, Eatman, Gardner & Kincheloe, by John P. Barringer, for defendant-appellant Continental Insurance Company.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Theodore B. Smyth, for defendant-appellant Horace Mann Insurance Company.*

BOWSER v. WILLIAMS

[108 N.C. App. 8 (1992)]

EAGLES, Judge.

Both Continental and Mann have appealed from the judgment below. We address Continental's appeal first.

### Continental's Appeal

[1] Continental argues that the trial court erred by concluding that its policy provided plaintiff $750,000 UIM coverage. We disagree.

Continental concedes in its statement of facts contained in its brief as appellant that it provided UM coverage of $25,000 per person and $50,000 per accident on the truck that Mr. Bowser was driving. Continental then states that its "policy was not issued with underinsured motorist coverage." This statement does not withstand close scrutiny of the Continental policy.

The Continental policy contains an endorsement on UM coverage. The following language appears at the top of that endorsement: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." The endorsement then defines uninsured motor vehicle as follows:

> The definition of "**uninsured motor vehicle**" in this endorsement applies in its entirety unless an "X" is entered below:
>
> ☐ If an "X" is entered in this box paragraph b. of the definition of "**uninsured motor vehicle**" does not apply.
>
> A. WORDS AND PHRASES WITH SPECIAL MEANING
> In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE:
>
> * * *
>
> 4. "**Uninsured motor vehicle**" means a land motor vehicle or trailer:
>
> * * *
>
> b. For which the sum of all bodily injury liability bonds or policies at the time of an **accident** provides at least the amounts required by the North Carolina Motor Vehicle Safety and Responsibility Act but their limits are less than the limits of this insurance, or . . . .

The language contained in paragraph b. essentially provides the conventional definition of an underinsured motor vehicle. See

*Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 420 S.E.2d 124, 126 (1992). There is no "X" in the box which would remove paragraph b. from the definition of an uninsured motor vehicle. Accordingly, Continental's policy defines uninsured motor vehicle to include an underinsured motor vehicle. It also follows, then, that Continental's policy purports on its face to provide UIM coverage of $25,000 per person and $50,000 per accident.

" 'The provisions of the Financial Responsibility Act are "written" into every automobile liability policy as a matter of law, and, when the terms of the policy conflict with the statute, the provisions of the statute will prevail.' " *Ohio Casualty Ins. Co. v. Leon*, 59 N.C. App. 621, 622, 298 S.E.2d 56, 57 (1982), *cert. denied*, 307 N.C. 698, 301 S.E.2d 101 (1983) (quoting *Insurance Co. v. Chantos*, 293 N.C. 431, 441, 238 S.E.2d 597, 604 (1977) ). "The primary purpose of the compulsory motor vehicle liability insurance required by North Carolina's Financial Responsibility Act is to compensate innocent victims who have been injured by financially irresponsible motorists. Furthermore, the Act is to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *South Carolina Ins. Co. v. Smith*, 67 N.C. App. 632, 636, 313 S.E.2d 856, 860, *disc. review denied*, 311 N.C. 306, 317 S.E.2d 682 (1984) (citations omitted).

The Financial Responsibility Act in ·G.S. 20-279.21 provides in pertinent part:

(b) Such owner's policy of liability insurance:

\* \* \*

(4) Shall, in addition to the coverages set forth in subdivisions (2) and (3) of this subsection, provide underinsured motorists coverage, to be used only with policies that are written at limits that exceed those prescribed by subdivision (2) of this section and that afford uninsured motorist coverage as provided by subdivision (3) of this subsection, *in an amount equal to the policy limits for automobile bodily injury liability as specified in the owner's policy.*

(Emphasis ours.)

Continental concedes that it provided liability coverage of $750,000, well in excess of that required by subdivision (b)(2). However, Continental argues that their UM coverage was not issued

**BOWSER v. WILLIAMS**

[108 N.C. App. 8 (1992)]

under subsection (3), but was instead issued pursuant to the Reinsurance Facility's rules. This argument fails. The provisions of the Financial Responsibility Act, including G.S. § 20-279.21 are written into every automobile liability policy as a matter of law. Accordingly, Continental's policy provided UM coverage as specified under G.S. 20-279.21.

Even though Continental's policy met the statutory requirements for UIM coverage, the policy purports to provide UIM coverage of only $25,000 per person and $50,000 per accident. G.S. § 20-279.21(b)(4) mandates that where UIM coverage is issued, it must be issued in an amount equal to the liability policy limits for bodily injury. Accordingly, Continental is liable for $750,000 UIM coverage on the truck driven by Mr. Bowser.

Despite the express language of the policy and the mandate of G.S. § 20-279.21(b)(4), Continental argues that it did not provide UIM coverage and was not required to obtain a written waiver of UIM coverage pursuant to G.S. § 20-279.21(b)(4) because its policy was ceded through the Reinsurance Facility. We note, again, that the provisions of the Financial Responsibility Act including G.S. § 20-279.21(b)(4) are written into every automobile liability policy as a matter of law. G.S. § 20-279.21(b)(4) requires that when a policy is eligible for UIM coverage, UIM coverage must be issued in an amount equal to bodily injury liability unless a written waiver is obtained. Here, Continental failed to obtain a written waiver of UIM coverage. This omission is fatal to Continental's appeal. *See Proctor v. N.C. Farm Bureau Mutual Ins. Co.*, 324 N.C. 221, 376 S.E.2d 761 (1989) (insurance company's failure to comply with former G.S. § 20-279.21 resulted in UIM coverage in an amount equal to liability coverage). We note in passing that Continental argues that *Proctor* is distinguishable from the instant case. We disagree and find no merit in this assignment of error.

### Horace Mann's Appeal

Mann raises two issues on appeal. First, Mann argues that the trial court erred by holding that Continental and Mann were co-primary UIM carriers. Second, Mann argues that the trial court erred by holding that Mann was not entitled to a set off from its UIM coverage to the extent that worker's compensation benefits are paid to the plaintiff. We address the arguments in tandem.

I

[2] In its first argument Mann contends the trial court erred by ruling that both Mann and Continental provided primary UIM coverage. We agree and reverse.

Both the Continental and the Mann policies provide "other insurance" clauses. The Continental clause provides:

**B. OTHER INSURANCE-PRIMARY AND EXCESS INSURANCE PROVISIONS.**

1. This policy's *liability coverage* is primary for any covered **auto** while hired or borrowed by **you** and used exclusively in **your** business and pursuant to operating rights granted to **you** by a public authority. This policy's *liability coverage* is excess over any other collectible insurance for any covered **auto** while hired or borrowed from **you** by another **trucker**. However, while a covered auto which is a **trailer** is connected to a power unit, this policy's *liability coverage:*

a. Is on the same basis, primary or excess, as for the power unit if the power unit is a covered **auto**.

b. Is excess if the power unit is not a covered **auto**.

2. Any trailer interchange insurance provided by this policy is primary for any covered **auto**.

3. *Except as provided in paragraphs 1 and 2 above, this policy provides primary insurance for any covered* **auto** **you** *own and excess insurance for any covered* **auto** **you** *don't own.*

4. *When two or more policies cover on the same basis, either excess or primary,* **we** *will pay only* **our** *share.* **Our** *share is the proportion that the limit of* **our** *policy bears to the total of the limits of all the policies covering on the same basis.*

(Emphasis ours.) The Continental policy defines "you" and "your" to "mean the person or organization shown as the named insured in ITEM ONE of the declarations." Both B & B Lines, Inc. and Cecil Barnes are named insureds. It is undisputed that the tractor trailer involved in the wreck was owned by B & B Lines, Inc.

The Mann insurance policy provides:

**BOWSER v. WILLIAMS**

[108 N.C. App. 8 (1992)]

OTHER INSURANCE

\* \* \*

In addition, if there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. *However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.*

(Emphasis ours.) The Mann policy defines "you" to include the named insured and his spouse. Both Milton Bowser and his wife Marilyn Bowser are named insureds under the Mann policy.

Mann argues that determination of primary and secondary UIM coverage in the instant case is governed by subsections 3 and 4 of Continental's "other insurance" clause and by the "excess" clause found in its own "other insurance" provision. Mann contends that the two contracts' provisions may be read together. We agree.

Continental argues that the "other insurance" clause in its contract is not applicable here because it did not provide UIM coverage to the plaintiff. Specifically, Continental argues that "all references to the Continental 'other insurance' clause refers specifically to the 'liability' coverage that Continental provided . . ." It is true that the plain language of subsection 1 of the "other insurance" clause expressly refers to liability coverage. However, subsection 3 states: *"[e]xcept as provided in Paragraphs 1 and 2 above,* this policy provides primary insurance coverage for any covered **auto you** own and excess insurance for any covered **auto you** don't own." It is clear from the language of this section that it applies to coverages other than liability coverage. Furthermore, we note that the "other insurance" provision is not contained within Part IV of the Continental policy designated for liability insurance. Rather, the other insurance clause is found in Part VII of the policy titled "CONDITIONS." It is clear that this section applies to UIM coverage.

In *Fidelity & Casualty Co. of New York v. North Carolina Farm Bureau Mutual Ins. Co.*, 16 N.C. App. 194, 192 S.E.2d 113, *cert. denied*, 282 N.C. 425, 192 S.E.2d 840 (1972), this Court addressed a similar issue. In *Fidelity*, the Court was confronted with interpretation of an excess clause and a pro rata clause in the

context of liability insurance coverage. *Id.* at 203, 192 S.E.2d at 121. There the court stated:

> The terms "prorate" and "excess" do not have, and were not meant by the insurers to have identical meanings. A construction which will give a fair meaning to both terms as used in the "other insurance" clauses is preferable to finding repugnancy.

*Id.* at 204, 192 S.E.2d at 121. Accordingly, the Court found that the insurance carrier's policy which contained the pro rata clause provided primary coverage while the carrier's policy containing the excess clause provided secondary coverage. *Id.*

Continental contends that *Fidelity* is distinguishable from the instant case because it dealt with liability coverage and not UIM coverage. We believe, however, that the *Fidelity* analysis holds true here despite its origin in the context of liability coverage.

Continental also argues that this case is controlled by *North Carolina Farm Bureau v. Hilliard*, 90 N.C. App. 507, 369 S.E.2d 386 (1988). However, *Hilliard* involved two policies which contained identical "other insurance" provisions. Accordingly, it is factually distinguishable.

## II

[3]   Mann next argues that it is entitled to a set off from its UIM coverage to the extent that worker's compensation benefits are paid or payable to Mr. Bowser's estate. Mann concedes that two cases have already decided this issue against the position it advocates. *See Ohio Casualty Ins. Group v. Owens*, 99 N.C. App. 131, 392 S.E.2d 647, *disc. review denied*, 327 N.C. 484, 396 S.E.2d 614 (1990); *Sproles v. Green*, 100 N.C. App. 96, 394 S.E.2d 691 (1990), *affirmed in part, reversed in part*, 329 N.C. 603, 407 S.E.2d 497 (1991). Accordingly, we overrule this assignment of error.

### Conclusion

In conclusion we hold that Continental provides $750,000 UIM coverage on the truck Mr. Bowser was driving; that the Continental policy provides primary UIM coverage; that the Mann policy provides only secondary UIM coverage; and that Mann is not entitled to a set off from its UIM coverage to the extent that worker's compensation benefits are paid or payable to Mr. Bowser's estate. Accordingly, we affirm in part and reverse in part.

**SYMONS CORP. v. QUALITY CONCRETE CONSTRUCTION**

[108 N.C. App. 17 (1992)]

Affirmed in part; reversed in part.

Judges JOHNSON and PARKER concur.