DANIEL M. HLASNICK AND DARLENE HLASNICK, PLAINTIFFS V. FEDERATED MUTUAL INSURANCE COMPANY AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DEFENDANTS

No. COA99-103

(Filed 18 January 2000)

## 1. Insurance— automobile—underinsured motorist coverage—rejection form

The trial court did not err in a declaratory judgment action to determine insurance coverage arising from an automobile accident by finding that plaintiffs were entitled to $50,000 in underinsured motorist coverage from defendant Federated Mutual where plaintiff argued that the underinsured coverage equals the limits of liability coverage when a mandatory selection/ rejection form is not completed. Federated was not required to use the Rate Bureau's selection/rejection form and the rejection was not required to be in writing because Federated's was a fleet policy which was not under the jurisdiction of the Rate Bureau. Although it would be preferable for the form to contain a written unambiguous rejection, Federated's form meets the bare requirements.

## 2. Insurance— automobile—underinsured motorist coverage—two-tiered

A two-tiered underinsured motorist policy which provided $50,000 of coverage to most employees of an automobile dealership and $500,000 in coverage to directors, officers, partners, or owners did not contravene the purpose of the Motor Vehicle Safety and Responsibility Act. Nothing in the Act requires all those covered under the policy to be insured at identical levels of coverage and the coverage here met the statutory minimum requirements for all employees.

**3. Insurance— automobile—underinsured motorist coverage—definition of company officer**

The general manager of an automobile dealership was not entitled to underinsured motorist coverage as an officer under a policy which provided coverage in one amount for most employees and in a greater amount for officers.

**4. Insurance— automobile—underinsured motorist coverage—primary and excess**

The trial court erred in a declaratory judgment action to determine underinsured motorist coverage by finding that defendant State Farm's policy provided primary coverage where there was no dispute that an automobile dealership owned the automobile, its policy (Federated) provided primary coverage for any automobile its insured owned, and the driver's policy (State Farm) stated that it would be only an excess provider with respect to a vehicle that its policyholder did not own. There was no need to consider the class into which the insured fell or to prorate coverage because the "other insurance" clauses in this case were not repugnant and could be read harmoniously. Limiting language relied upon by Federated did not apply because it referred to coverage "on the same basis," which was not the case here.

Appeal by plaintiffs and defendant State Farm Mutual Automobile Insurance Company from judgment entered 3 November 1998 by Judge B. Craig Ellis in Wake County Superior Court. Heard in the Court of Appeals 21 October 1999.

*Thompson, Smyth & Cioffi, L.L.P., by Theodore B. Smyth, and Michaels & Jones, by Gregory M. Martin, for plaintiff-appellants.*

*DeBank & Honeycutt, by Douglas F. DeBank, for defendant-appellant State Farm Mutual Automobile Insurance Company.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Mallory A. Taylor, for defendant-appellee Federated Mutual Insurance Company.*

EDMUNDS, Judge.

Plaintiff Daniel M. Hlasnick (Mr. Hlasnick) was general manager at RPM Lincoln-Mercury, LLC (RPM), an automobile dealership in

Durham, North Carolina. On 18 August 1996, Hlasnick was operating a Dodge pick-up truck owned by the dealership when he was involved in an accident with Norman M. Smith (Smith). At the time of the accident, Mr. Hlasnick was running a personal errand; his wife (Mrs. Hlasnick) was a passenger in the truck and is the second plaintiff in this action. Plaintiffs brought suit against Smith for negligence in a separate action unrelated to this appeal. The parties filed this declaratory judgment action to determine the underinsured motorist coverage available to plaintiffs beyond the $25,000/$50,000 limits of Smith's insurance policy, which already has been tendered to plaintiffs in exhaustion of Smith's policy limits.

Three other insurance policies are pertinent to this appeal. The first is a commercial auto policy issued by defendant Federated Mutual Insurance Company (Federated Mutual) to RPM, which insured the pick-up truck Mr. Hlasnick was driving at the time of the accident. This policy establishes two tiers of underinsured motorist coverage, providing $50,000 in coverage to most employees of the dealership, while providing $500,000 in coverage to "any director, officer, partner or owner" of RPM. The other two policies involved in this dispute are personal auto policies issued to Mr. and Mrs. Hlasnick by defendant State Farm Mutual Auto Insurance Company (State Farm). Each of these policies provides underinsured motorist coverage of $100,000 per person and $300,000 per accident.

The trial court denied plaintiffs' motion for summary judgment and granted defendant Federated Mutual's motion for summary judgment, finding that plaintiffs were entitled to a total of $50,000 in underinsured motorist coverage under Federated Mutual's two-tiered policy. The court further found that the coverage provided by State Farm was primary and that the coverage provided by Federated Mutual was excess. Plaintiffs and defendant State Farm appeal. We affirm the trial court's finding as to plaintiffs' coverage under Federated Mutual's policy but reverse the trial court's determination that State Farm's coverage was primary.

I.

[1] Plaintiffs first contend the trial court erred in finding that "[p]laintiffs are entitled to a total of $50,000 in underinsured motorist coverage from Defendant Federated Mutual Insurance Company . . . ." As a result of this determination, the trial court denied plaintiffs' motion for summary judgment and granted Federated Mutual's motion for summary judgment. A trial court may grant a

motion for summary judgment where there is no genuine issue of material fact and where the movant is entitled to judgment as a matter of law. *See Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971). While there is a presumption that the trial court found facts from proper evidence sufficient to support its ruling on a summary judgment motion, *see J.M. Thompson Co. v. Doral Manufacturing Co.*, 72 N.C. App. 419, 423-24, 324 S.E.2d 909, 912 (1985), we review the record in the light most favorable to the nonmoving party, *see Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975). "A trial court's grant of summary judgment is fully reviewable by this Court because the trial court rules only on questions of law." *Metropolitan Prop. and Casualty Ins. Co. v. Lindquist*, 120 N.C. App. 847, 849, 463 S.E.2d 574, 575 (1995) (citation omitted).

Plaintiffs first argue that under the Motor Vehicle Safety and Financial Responsibility Act of 1953 (the Act), N.C. Gen. Stat. §§ 20-279.1 to 20.279.39 (1993), when a mandatory selection/rejection form is not completed, the underinsured motorist coverage provided by the carrier equals the limits of its liability coverage under the policy. The Act, which includes provisions for underinsured motorist coverage, "is a remedial statute which must be liberally construed in order to achieve the 'beneficial purpose intended by its enactment.' " *Hedrickson v. Lee*, 119 N.C. App. 444, 449, 459 S.E.2d 275, 278 (1995) (citation omitted). The Act's purpose is to protect innocent victims "injured by financially irresponsible motorists." *Proctor v. N.C. Farm Bureau Mutual Ins. Co.*, 324 N.C. 221, 224, 376 S.E.2d 761, 763 (1989) (citation omitted). The Act's provisions "are 'written' into every automobile liability policy as a matter of law, and, when the terms of [a] policy conflict with the statute, the provisions of the statute will prevail." *Insurance Co. v. Chantos*, 293 N.C. 431, 441, 238 S.E.2d 597, 604 (1977) (citations omitted).

The parties do not dispute that Federated Mutual is required to provide some amount of underinsured motorist coverage under this policy. However, they disagree as to whether N.C. Gen. Stat. § 20-279.21(b)(4) (1993) requires Federated Mutual to use a form promulgated by the North Carolina Rate Bureau (Rate Bureau) when it offers an insured the opportunity to select or reject underinsured motorist coverage. The statute reads in pertinent part:

> The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage. An insured named in the policy may select different cover-

HLASNICK v. FEDERATED MUT. INS. CO.

[136 N.C. App. 320 (2000)]

age limits as provided in this subdivision. If the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy. . . . The selection or rejection of underinsured motorist coverage by a named insured or the failure to select or reject is valid and binding on all insureds and vehicles under the policy.

Rejection of or selection of different coverage limits for underinsured motorist coverage *for policies under the jurisdiction of the North Carolina Rate Bureau* shall be made in writing by the named insured on a form promulgated by the Bureau and approved by the Commissioner of Insurance.

N.C. Gen. Stat. § 20-279.21(b)(4) (emphasis added).

Federated Mutual argues that its insurance policy was not under the jurisdiction of the Rate Bureau, and therefore, it was not required to use the Rate Bureau's selection/rejection form. We agree. Section 58-36-1(1) provides, in pertinent part, that the Rate Bureau's jurisdiction over automobile insurance covers

theft of and physical damage to private passenger (nonfleet) motor vehicles as the same are defined under Article 40 of this Chapter; for liability insurance *for such motor vehicles*, automobile medical payments insurance, uninsured motorists coverage and other insurance coverages written in connection with the sale of such liability insurance . . . .

N.C. Gen. Stat. § 58-36-1(1) (1994) (emphasis added). A "nonfleet" motor vehicle "means a motor vehicle not eligible for classification as a fleet vehicle for the reason that the motor vehicle is one of four or less motor vehicles owned or hired under a long-term contract by the policy named insured." N.C. Gen. Stat. § 58-40-10(2) (1994). There is no dispute that Federated Mutual's policy insured more than four vehicles; therefore, the policy is a fleet policy.

Before its amendment in 1991, section 20-279.21(b)(4) required that Rate Bureau forms be used for selecting or rejecting underinsured motorist coverage; there was no exception for vehicles that were not under the jurisdiction of the Rate Bureau. However, we interpret the policies in accordance with the wording of the statute in effect at the time the policies were issued, *see White v. Mote,* 270 N.C.

544, 555, 155 S.E.2d 75, 82 (1967); therefore, authority cited by plaintiffs that interprets the section as worded prior to its amendment is not controlling. Federated Mutual's policy provided coverage from 1 February 1996 to 1 February 1997, well after the amendment became effective. Because the plain language of the statute does not require Federated Mutual to use the Rate Bureau's selection/rejection form, Federated Mutual permissibly used its own form for selection or rejection of underinsured motorist coverage.

Plaintiffs point out that the form used here contained no written notice to the insured of the option to reject underinsured coverage and consequently is deficient. However, the statute requires that rejection be in writing only when the policy is under Rate Bureau jurisdiction. See N.C. Gen. Stat. § 20-279.21(b)(4). But see Sanders v. American Spirit Insurance Co., 135 N.C. App. 178, 519 S.E.2d 323 (1999) (where written policy required, no variation permitted from form promulgated by Rate Bureau and approved by Commissioner of Insurance). Here, the insurer provided notice in writing of the option to select underinsured motorist coverage. An insured's rejection of the coverage can be inferred from the insured's failure to select such coverage. Although it would be preferable if the form contained a written provision allowing an insured unambiguously to reject such coverage, the form used by Federated Mutual nevertheless meets the bare statutory requirements.

[2] Plaintiffs next argue that, even if Federated Mutual was not required to use a Rate Bureau form, Federated Mutual's two-tiered coverage contravened the purpose of the Act. The underinsured motorist provision in Federated Mutual's policy permitted the insured to select different levels of coverage for different classes of covered individuals. RPM selected coverage in the amount of $500,000 for "any director, officer, partner or owner of the named insured" and his or her qualified family member, and coverage in the amount of $50,000 for any other qualified person. Federated Mutual concedes that the policy provides underinsured motorist coverage for plaintiffs, but only in the amount of $50,000.

The Act provides a floor of underinsured coverage that insurers must provide. Section 20-279.21(b)(4) mandates that coverage for underinsured motorists may not "be less than the financial responsibility amounts for bodily injury liability as set forth in G.S. 20-279.5." N.C. Gen. Stat. § 20-279.21(b)(4). Section 20-279.5 provides in pertinent part:

[I]f the accident has resulted in bodily injury or death, to a limit, exclusive of interest and cost, of not less than twenty-five thousand dollars ($25,000) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than fifty thousand dollars ($50,000) because of bodily injury to or death of two or more persons in any one accident . . . .

N.C. Gen. Stat. § 20-279.5 (1993). An insured named in the policy has the freedom to reject all underinsured motorist coverage or to select different coverage limits as long as the limits are within the statutory minimum. *See* N.C. Gen. Stat. § 20-279.21(b)(4). Nothing in the Act requires all those covered under the policy to be insured at identical levels of coverage. An insurance policy is a contract, and its terms govern the rights of the parties. *See Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). The insurer and insured are free to bargain over premiums and coverage, as occurred in the case at bar. The coverage selected by RPM met the statutory minimum requirements for all employees and exceeded the statutory minimum for some. As long as the statutory requirements are met, we can see no reason either in the Act or in public policy to prevent an insured from obtaining underinsured motorist coverage in excess of the statutory minimum for employees it considers particularly valuable.

[3] Plaintiffs argue in the alternative that, if the two-tiered coverage is valid, Mr. Hlasnick is an "officer" of RPM under the uninsured and underinsured motorist provisions of Federated Mutual's policy and is therefore entitled to the increased coverage. The policy reads in pertinent part:

In consideration of the premium charged, the limit for Uninsured and Underinsured Motorists Coverage as provided by your policy is modified as follows:

1. For any director, officer, partner or owner of the named insured and his or her "family member" who qualify as an "insured" under the WHO IS INSURED provision of the Uninsured and Underinsured Motorists Coverage attached to this policy, the limit of insurance shall be as follows:

   $ 500,000 Limit of Insurance

2. For any other person qualifying as an "insured" under the WHO IS AN INSURED provision of the applicable coverage, the limit

shown below shall apply. If no limit is shown below, no coverage is afforded to any other person.

$ 50,000 Limit of Insurance

Our Supreme Court has discussed the general principles of construction applicable to disputed terms in an insurance policy:

Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder. Whereas, if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.

*Woods v. Insurance Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978). "An insurance policy is to be construed as a whole . . . ." *Chavis v. Southern Life Ins. Co.*, 76 N.C. App. 481, 484, 333 S.E.2d 559, 562 (1985) (citation omitted).

Plaintiffs concede that Mr. Hlasnick is not a director, partner, or owner of RPM, but contend that his duties as general manager make him an officer of the company. Federated Mutual's policy does not provide a definition of the term "officer." However, reviewing the policy as a whole, we find that the parties did not intend for Mr. Hlasnick to be considered an officer. In that section of the policy dealing with "Garage Coverage," employees are grouped into one of three categories. Class I employees include:

1a—Proprietors, partners and officers active in the business; salespersons and general managers who are furnished a covered "auto" or drive a covered "auto" to and from work; any other employee who is furnished a covered "auto" or whose principal duties involve the operation of "autos".

1b—Salespersons and general managers who are not furnished a covered "auto" and do not drive a covered "auto" to and from work.

1c—All other employees.

The policy's differentiation between "proprietors, partners and officers" and "salespersons and general managers" indicates to us that, for the purposes of coverage, the parties did not consider a general manager to be an "officer" within the terms of the policy. Therefore, Mr. Hlasnick was not entitled to coverage as an officer. This assignment of error is overruled.

II.

[4] State Farm contends the trial court erred in finding that the "underinsured motorist coverage provided to Plaintiffs by Defendant State Farm Mutual Automobile Insurance Company is primary and the . . . underinsured motorist coverage provided to Plaintiffs by Defendant Federated Mutual Insurance Company is excess." No provision of N.C. Gen. Stat. §§ 20-279.21 to 20-279.39 "expressly establishes a statutory priority of payment among different insurance policies." *N.C. Farm Bureau Mut. Ins. Co. v. Hilliard*, 90 N.C. App. 507, 510, 369 S.E.2d 386, 388 (1988). State Farm insured the two personal vehicles belonging to plaintiffs. Neither of these vehicles was involved in the accident in which plaintiffs were injured; instead, Mr. Hlasnick was driving a car owned by RPM. RPM insured all its cars through defendant Federated Mutual. "To determine who is the primary carrier and who is the excess carrier, if any, we must examine the 'Other Insurance' clauses in the competing policies." *Isenhour v. Universal Underwriters Ins. Co.*, 341 N.C. 597, 608, 461 S.E.2d 317, 323 (1995) (citation omitted), *superseded by statute on other grounds as stated in N.C. Farm Bureau Mut. Ins. Co. v. Stamper*, 122 N.C. App. 254, 468 S.E.2d 584 (1996).

The State Farm policy included a section labeled "Other Insurance," which provides, "any insurance we [(State Farm)] provide with respect *to a vehicle you do not own shall be excess over any other collectible insurance.*" (Emphasis added.) The Federated Mutual policy issued to RPM contains an "Other Insurance" provision in the general liability portion of its contract. The Federated Mutual policy reads, in pertinent part: "For any covered 'auto' you own, this Coverage Form provides primary insurance. For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance."

Reading these "other insurance" provisions together leads us to conclude that the trial court erred when it found State Farm to be the primary carrier for underinsured motorist coverage. State Farm's policy explicitly stated that it would be only an excess provider with respect to a vehicle that its policyholder did not own. By contrast, Federated Mutual's policy provided that it would provide primary coverage for any automobile its insured owned. There is no dispute that RPM owned the truck involved in the collision; consequently, Federated Mutual is the primary carrier.

Federated Mutual nevertheless points out that its policy also contains the following additional language in its "Other Insurance" section:

> When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

However, this provision is inapplicable because State Farm did not provide underinsured motorist coverage "on the same basis" as Federated Mutual. Federated Mutual's coverage is based upon RPM's ownership of the vehicle driven by Mr. Hlasnick; State Farm's coverage is based upon a policy maintained by Mr. Hlasnick for his personal vehicles.

We reached a similar result in *Bowser v. Williams*, 108 N.C. App. 8, 422 S.E.2d 355 (1992), *overruled on other grounds by McMillian v. N.C. Farm Bureau Mut. Ins. Co.*, 347 N.C. 560, 495 S.E.2d 352 (1998), where Bowser was killed in an accident while driving a truck owned by his employer. The employer's truck was insured under a Continental Insurance Company policy that provided underinsured motorist coverage. Bowser was covered by a personal insurance policy issued by Horace Mann Insurance Company that also provided underinsured motorist coverage. The Continental policy contained an "Other Insurance" clause, which made its liability coverage primary; however, if other coverage was available "on the same basis," the policy provided pro rata or proportional coverage. Bowser's personal policy contained a clause that stated: "*[A]ny insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.*" *Bowser*, 108 N.C. App. at 15, 422 S.E.2d at 359. We held that, under these facts, the Continental insurance pol-

icy of the truck owner provided primary coverage, and the Horace Mann policy, held by Bowser personally, provided excess coverage. *See id.* at 16, 422 S.E.2d at 360.

Finally, Federated Mutual, relying on the analysis found in *Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. 139, 400 S.E.2d 44 (1991), maintains that determination of the primary and excess carrier depends upon the class of insured in which plaintiff falls under each policy.

> "N.C. Gen. Stat. [§] 20-279.21(b)(3) establishes two 'classes' of 'persons insured': (1) the named insured and, while resident of the same household, the spouse of the named insured and relatives of either and (2) any person who uses with the consent, express or implied, of the named insured, the insured vehicle, and a guest in such vehicle."

*Id.* at 143, 400 S.E.2d at 47 (quoting *Crowder v. N.C. Farm Bureau Mut. Ins.* Co., 79 N.C. App. 551, 554, 340 S.E.2d 127, 129 (1986)). However, *Smith* provides little guidance for the case at bar. In *Smith*, there were two policies. The insureds were in the same class under both policies, the term "you" in each policy referred to the same individual, and the policies contained identical "other insurance" provisions. By contrast, plaintiffs here are second-class insureds under Federated Mutual's policy, but are first-class insureds under State Farm's policy; the term "you" in the different policies refers to different individuals; and the "other insurance" provisions in the policies are not identical. "The liability of each company must be determined by the terms of its own policy . . . ." *Insurance Co. v. Insurance Co.*, 269 N.C. 341, 346, 152 S.E.2d 436, 440 (1967). Where an insured is in the same class under two policies and the "other insurance" clauses in the policies are mutually repugnant, the claims will be prorated. *See N.C. Farm Bureau Mut. Ins. Co. v. Bost*, 126 N.C. App. 42, 483 S.E.2d 452 (1997); *Hilliard*, 90 N.C. App. 507, 369 S.E.2d 386. However, there is no need to consider the class into which an insured falls or to prorate coverage where, as here, the "other insurance" clauses are not mutually repugnant, but may be read together harmoniously. *See Iodice v. Jones*, 133 N.C. App. 76, 79 n.3, 514 S.E.2d 291, 293 n.3 (1999). "A construction which will give a fair meaning to both terms as used in the 'other insurance' clauses is preferable to finding repugnancy." *Casualty Co. v. Insurance Co.*, 16 N.C. App. 194, 204, 192 S.E.2d 113, 121 (1972). We therefore conclude that the trial court erred in finding that State Farm's policy provided primary coverage. We remand for a finding on this issue consistent with this opinion.

## III.

In light of recent holdings of our Supreme Court, plaintiffs have properly abandoned their argument that a separate umbrella policy issued by Federated Mutual would provide underinsured motorist coverage. *See Progressive American Ins. Co. v. Vasquez*, 129 N.C. App. 742, 502 S.E.2d 10 (1998), *rev'd*, 350 N.C. 386, 515 S.E.2d 8 (1999); *Piazza v. Little*, 129 N.C. App. 77, 497 S.E.2d 429 (1998), *rev'd*, 350 N.C. 585, 515 S.E.2d 219 (1999).

Affirmed in part, reversed in part, and remanded.

Judges WYNN and HORTON concur.